BARRY J. SMITH, SR.,

        Plaintiff,

    v.

Case No. 19-cv-1001-pp

UNITED STATES CONGRESS,
and WISCONSIN LEGISLATURE,

        Defendants.

---

**ORDER DENYING AS MOOT UNITED STATES CONGRESS'S MOTION TO CONSOLIDATE (DKT. NO. 5(I)), GRANTING MOTION TO DISMISS UNITED STATES CONGRESS AS A DEFENDANT (DKT. NO. 5(II)), GRANTING IN PART UNITED STATES CONGRESS'S MOTION FOR AN ORDER PRECLUDING PLAINTIFF FROM INITIATING FURTHER *PRO SE* SUITS (DKT. NO. 5(III)) AND DISMISSING CASE**

---

On July 15, 2019, the plaintiff, representing himself, filed a civil rights complaint against the United States Congress and the Wisconsin Legislature. Dkt. No. 1. He alleged that his 1990 conviction for threatening the life of a federal judge subjected him to unconstitutional slavery or involuntary servitude in violation of the Thirteenth Amendment, because he is the descendant of slaves. Id. at 1. He alleged that he completed serving his term of "Thirteenth Amendment enslavement" long ago and that he is entitled to "complete restoration of his citizenship." Id. at 2. The complaint alleged that the defendants have deprived him of various constitutional rights, including his right to be free from slavery under the Thirteenth Amendment, his Second Amendment right to keep and bear arms and his Fifteenth Amendment right "to vote for the free person of his choice for elected office." Id. The complaint

alleged that the defendants "have enacted unconstitutional laws to conceal that they have denied plaintiff's citizenship rights except such as those which they choose to grant him." Id. It also alleged that the defendants acted "against plaintiff's citizenship rights under the Dred Scott case." Id. As relief, the plaintiff "demands his full and unabridged United States of America Citizenship rights be immediately restored." Id.

One of the defendants, the United States Congress, filed a motion to consolidate cases, to dismiss and to preclude the plaintiff from initiating further *pro se* suits. Dkt. No. 5. The motion asks the court to consolidate this case with Smith v. U.S. Congress, Case No. 18-cv-988 and Smith v. U.S. Congress, Case No. 19-cv-671. Id. at 6. It also asks the court to bar the plaintiff from filing any further cases, given his history of litigation on the claims he raised in the complaint.

The court will deny as moot the United States Congress's motion to consolidate cases, because in separate orders it already has dismissed the two cases to which the motion refers. The court will grant the motion to dismiss the United States Congress as a defendant. The court also will grant in part the United States Congress's request to bar the plaintiff from filing further cases.

The other defendant, the Wisconsin Legislature, has not appeared. Because the court finds that the plaintiff's claims against the legislature are obviously frivolous, the court will dismiss those claims *sua sponte* for lack of subject-matter jurisdiction.

## I.    Litigation History

The plaintiff's history of litigation in this district dates back more than thirty years. In 1987, he filed a housing discrimination lawsuit, Smith v. National Corp., Case No. 87-cv-1300. United States District Judge John Reynolds dismissed that lawsuit, and denied the plaintiff's motion to reconsider on October 9, 1989. Id. at Dkt. No. 101.

> [A]t 2:20 a.m. on December 29, 1989, Arthur Roby, a Security Complaint Assistant for the Milwaukee office of the FBI, received a telephone call from [the plaintiff]. [The plaintiff] threatened to kill Judge Reynolds in the morning at the courthouse with a 16th century Jewish sword. [The plaintiff] said that he was angry with Judge Reynolds for dismissing his suit, and he provided his address. [The plaintiff] also indicated that he was calling to warn the FBI so that it could stop him.

United States v. Smith, Case No. 90-2368, 1991 WL 36269, at *1 (7th Cir. March 18, 1991). A jury convicted the plaintiff of threatening the life of a federal judge in violation of 18 U.S.C. §115(a)(1)(B), and Judge J. P. Stadtmueller sentenced him to serve a twelve-month sentence in custody followed by four years of supervised release (later reduced to three years). Id. The Seventh Circuit affirmed the conviction and sentence. Id. at *4.

In the last eleven and a half years, courts in this district have dismissed six civil complaints from the plaintiff, all alleging various violations of the plaintiff's constitutional rights due to his status as a descendant of slaves and his status as a convicted felon. Smith v. United States, Case No. 08-cv-262; Smith v. President of the United States, Case No. 08-cv-956; Smith v. United States Congress, Case No. 13-cv-206; Smith v. United States, Case No. 17-cv-

3

1419; <u>Smith v. United States Congress</u>, Case No. 18-cv-988; <u>Smith v. United States Congress</u>, Case No. 19-cv-671.

In the first case, <u>Smith v. United States</u>, Case No. 08-cv-262, the plaintiff sued the United States and the State of Wisconsin, challenging the fact that his conviction prevented him from running for alderman. He claimed that he was entitled to relief under the due process and equal protection clauses. <u>Id.</u> at Dkt. No. 3. Judge Rudolph T. Randa dismissed the case, explaining to the plaintiff that the legislature had a rational basis for preventing convicted felons from running for office, that he'd sued the wrong defendants (because the legislatures, not the governments, made and enforced the laws), and that portions of his claims were "patently frivolous." <u>Id.</u> at 1-3.

In the second case, <u>Smith v. President of the United States</u>, the plaintiff sued the President of the United States, the governor of Wisconsin and the mayor of Milwaukee, alleging that he had been "denied public employment opportunities, the right to bear a firearm and the right to 'vote for himself as a candidate' due to 'his previous conditions of Thirteenth Amendment Slavery.'" <u>Smith</u>, Case No. 08-cv-956, 2009 WL 2591624, *2 (E.D. Wis.). Judge J. P. Stadtmueller explained to the plaintiff that the Constitution does not prevent the federal or state governments from limiting a convicted felon's civil rights, including the right to carry a firearm the right to vote and the right to hold public office. <u>Id.</u> (citing <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570, 626-627 (2008); <u>Richardson v. Ramirez</u>, 418 U.S. 24, 56 (1974); and <u>Romer v. Evans</u>, 517 U.S. 620, 624 (1996)). Judge Stadtmueller pointed out that "[t]hese

limitations on one's rights as a citizen are well-recognized collateral consequences of a felony conviction, and the constitutionality of those long-standing consequences are not legitimately disputed." Id.

In the third case, the plaintiff sued the United States Congress, the President of the United States, the governor of Wisconsin, the mayor of Milwaukee and the Social Security Administration. Smith v. United States Congress, Case No. 13-cv-206. He alleged that the Social Security Administration had refused to allow him to participate in a program due to racism, and argued that he was being denied a laundry list of constitutional rights "based on a pattern and practice of Racism directed against him as a descendent of the slaves described by United States Supreme Court Chief Justice Taney in Dred Scott v. Sanford, 60 U.S. (19 How.) 393, 15 L. Ed. 691." Id. at Dkt. No. 1. Judge Charles N. Clevert, Jr. dismissed all the defendants except the Social Security Administration, noting that the plaintiff had made no specific allegations against any of the other defendants. Id. at Dkt. No. 20. Subsequently, when the plaintiff failed to amend his complaint as to the Social Security Administration, the court dismissed the entire case as frivolous. Id. at Dkt. No. 29.

Despite these decisions, the plaintiff filed a fourth case in 2017, again naming the United States of America and the State of Wisconsin (the defendants Judge Randa had told him were not appropriate parties), alleging that he was being denied a long list of constitutional rights because of his status as a descendant of slaves. Smith v. United States, Case No. 17-cv-1419.

Magistrate Judge David Jones dismissed this case for lack of subject-matter jurisdiction (as to the State of Wisconsin) and for failure to state a claim, reiterating the rulings of the prior judges and going into more detail about some of the plaintiff's specific allegations not addressed by the other judges. <u>Id.</u> at Dkt. No. 16.

The plaintiff filed his fifth case in 2018, again suing the United States of America and the State of Wisconsin. <u>Smith v. United States Congress</u>, Case No. 18-cv-988. Just under two weeks after he filed the complaint, he amended it, naming the United States Congress and the Wisconsin Legislature as defendants. <u>Id.</u> at Dkt. No. 3. In the amended complaint, the plaintiff argued that the Commerce Clause to the United States Constitution did not authorize Congress to regulate his right to have a firearm, and that "Amendment 3(2)(3)" of the Wisconsin Constitution unconstitutionally barred him from running for office. <u>Id.</u> at Dkt. No. 3. The amended complaint consisted of only two paragraphs.

The United States Congress filed a motion to dismiss, <u>id.</u> at dkt. no. 6; the Wisconsin Legislature did not. Judge Joseph granted the Congress's motion to dismiss the amended complaint. <u>Id.</u> at Dkt. No. 15. The plaintiff appealed. <u>Id.</u> at Dkt. No. 17. The Seventh Circuit dismissed the appeal, stating that Judge Joseph did not have the authority to dismiss the case as to both defendants because the Wisconsin Legislature had not consented to her authority to issue a final decision. <u>Id.</u> at Dkt. No. 24. Accordingly, Judge Joseph vacated her order, and issued a report recommending that this court

dismiss the case. Id. at Dkt. No. 25. She also recommended that this court deny the plaintiff's motion to file a second amended complaint (id. at dkt. no. 21), which he filed *after* Judge Joseph had dismissed his original complaint. This court has issued an order dismissing Case No. 18-cv-988 and adopting Judge Joseph's recommendation to deny the plaintiff's motion for leave to file a second amended complaint in that case.

The plaintiff filed the sixth case in May of this year, again suing the United States Congress and the Wisconsin Legislature. Smith v. United States Congress, Case No. 19-cv-671. The allegations in that complaint were identical to the allegations he sought to bring in the proposed second amended complaint in the 2018 case—that the federal and state statutes prohibiting felons from possessing firearms constituted unconstitutional bills of attainder under Article I, §9, Clause 3 of the U.S. Constitution, as did the provision of the Wisconsin Constitution that prohibits felons from holding elected office unless pardoned, and that Wisconsin's prohibition on his right to vote violated the Fifteenth and Thirteenth Amendments. Id. at Dkt. No. 1. Both the United States Congress and the Wisconsin Legislature filed motions to dismiss. The court has issued an order dismissing that case for failure to state a claim.

## II.     The Current Complaint

The claims the plaintiff has raised in this seventh complaint are not new. Other judges have ruled on them, and this court has ruled on them. He asserts that his conviction and sentencing for threatening Judge Reynolds constituted a violation of the Thirteenth Amendment's prohibition against slavery and

involuntary servitude. He alleges that because he finished serving that sentence a long time ago, he is entitled to the restoration of all his civil rights (including his right to keep and bear arms under the Second Amendment and his rights under the Fifteenth Amendment). Finally, he appears to assert that these alleged deprivations of his rights violate the Supreme Court's decision in Dred Scott v. Sanford, 60 U.S. 393 (1857).

## III. The United States Congress's Motion to Dismiss

The United States Congress argues that the court should dismiss the complaint because the United States Congress did not waive its sovereign immunity, dkt. no. 5 at 7, and because it fails to state a claim upon which this court may grant relief, id. at 7-8. The Congress appears to acknowledge that it is not the only defendant named in the complaint. id. at 8 n.4 (asserting that the plaintiff's challenge to the Wisconsin law prohibiting felons from running for elected office "is a claim directed at the State of Wisconsin, rather than the U.S. Congress"). The court assumes that the United States Congress is asking the court to dismiss it as a defendant, and is not seeking dismissal on behalf of the Wisconsin Legislature.

### A. Sovereign Immunity

The United States Congress has asked the court to dismiss it as a defendant because it has not waived its sovereign immunity. Dkt. No. 5. The court agrees that it does not have jurisdiction to entertain any claims against the United States Congress. The plaintiff has presented no evidence indicating that the United States Congress has waived sovereign immunity. F.D.I.C. v.

8

Meyer, 510 U.S. 471, 475 (1994); Joseph v. Bd. of Regents of the Univ. of Wis. Sys., 432 F.3d 746, 748 (7th Cir. 2005). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Meyer, 510 U.S. at 475. "Sovereign immunity is jurisdictional in nature," id., which means that if the Congress has not waived sovereign immunity, this court does not have jurisdiction over the claim against it.

B.    Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A.,

614 F.3d 400, 404-05 (7th Cir. 2010)). "[T]he proper question to ask is still could these things have happened, not did they happen." Id. at 827 (internal quotation and citation omitted). The plaintiff "need not 'show' anything to survive a motion under Rule 12(b)(6)—he need only allege." Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

The plaintiff asserts that his conviction and sentence for threatening Judge Reynolds violated the Thirteenth Amendment. Regarding the United States Congress, the court construes this as a claim that in passing the law criminalizing threats on the life of a federal judge, the Congress violated the Thirteenth Amendment. That claim has no merit. The Thirteenth Amendment states that "[n]either slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted*, shall exist within the United States . . . ." The amendment specifically carves out lawful convictions from the definitions of "slavery" and "involuntary servitude." "It is clear that [the Thirteenth Amendment], besides abolishing forever slavery and involuntary servitude within the United States, gives power to congress to protect all persons within the jurisdiction of the United States from being in any way subjected to slavery or involuntary servitude, *except as a punishment for* crime . . . ." United States v. Harris, 106 U.S. 629, 640 (1883) (emphasis added). The Thirteenth Amendment did not prohibit Congress from passing a law making it a crime to threaten the life of a federal judge, and the plaintiff was duly convicted of and punished for that crime; the appellate court affirmed the

conviction and sentence. The complaint does not state a claim that the United States Congress has violated the Thirteenth Amendment.

The plaintiff contends that he is a direct descendant of slaves; he appears to believe that because it was unlawful for his ancestors to be enslaved, the United States Congress had no authority to deprive him of his Second Amendment right to keep and bear arms by making it a crime for felons to possess firearms. This claim is meritless for several reasons. First, there is no relationship between the fact that the plaintiff's ancestors were slaves and the fact that it is a federal crime for felons to possess firearms. It is a crime for felons who cannot show that their ancestors were slaves to possess firearms. The plaintiff has cited no authority for this claim, because there isn't any.

Second, the plaintiff has not alleged that he has been convicted of being a felon in possession in violation of 18 U.S.C. §922(g)(1), the federal felon-in-possession statute.

Third, to the extent that the plaintiff argues that Congress has violated his Second Amendment rights by passing a law that permanently bars felons such as himself for possessing firearms, more than one judge in this district has told the plaintiff that he is mistaken; Judges Stadtmueller and Jones, as well as this court, have cited <u>Heller</u>, 544 U.S. at 626, in which the Supreme Court held that limitations on a felon's Second Amendment rights were not unconstitutional. <u>See also</u> <u>McDonald v. City of Chi</u>., Ill., 561 U.S. 742, 786 (2010).

The plaintiff asserts that he is entitled to restoration of his Fifteenth Amendment right to vote for the free person of his choice for elected office. The United States Congress correctly points out that to the extent that this is a claim that the plaintiff has been denied his right to run for elected office, that claim is directed at the Wisconsin Legislature; there is no federal statute prohibiting felons from running for office.

Finally, the plaintiff's assertion that the U.S. Congress has passed laws that somehow have violated the rights accorded to him by the Supreme Court's decision in Dred Scott v. Sandford is mystifying. The Dred Scott case held that "the Constitution did not recognize black Americans as citizens of the United States or their own State." McDonald, 561 U.S. at 807-808. The court assumes that the plaintiff is African American. If that is true, Dred Scott afforded him *no* civil rights. It *denied* African Americans the rights accorded to other citizens. Thankfully, section 1 of the Fourteenth Amendment overruled the holding in Dred Scott, providing that any person born or naturalized in the United States is a citizen of the United States and of the state in which he resides. Id. at 807. The plaintiff has not alleged that the United States Congress has passed any laws that deny him his Fourteenth Amendment rights.

The court will dismiss the United States Congress as a defendant, because the complaint fails to state any claims against it for which this court may grant relief.

## IV. The Claims Against the Wisconsin Legislature

The Wisconsin Legislature has not filed an appearance or answered the complaint, although the plaintiff filed the complaint four months ago. It is possible that the plaintiff has not properly served the legislature. The court notes that on the last page of the complaint, the plaintiff certified that he had "either personally served or served by United States mail, postage prepaid," a copy of the complaint on "Wisconsin Attorney General Josh Kaul, 114 East State Capitol, Madison, WI 53702." Dkt. No. 1 at 3. In one of the plaintiff's previous cases, the Wisconsin Legislature pointed out that state law (Wis. Stat. §801.11(3)) requires personal service, not mail. <u>Smith v. United States Congress</u>, Case No. 18-cv-988, Dkt. No. 28 at 4-5. But the Wisconsin Legislature has not filed a motion under Fed. R. Civ. P. 12(b)(5) to dismiss for failure to properly serve.

Federal Rule of Civil Procedure 4(m) says that if a plaintiff doesn't serve a defendant within ninety days after the complaint is filed, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time." More than ninety days has passed since the plaintiff filed his complaint. If he has not effected proper service on the Wisconsin Legislature, the court must dismiss, unless the plaintiff can show good cause for his failure to properly serve the legislature. But the court does not know whether the plaintiff has effected proper service.

As the court will discuss below, it believes the plaintiff has abused the federal judicial system by repeatedly raising the same claims over a period of years but characterizing them differently and asserting them against different defendants. The claims the plaintiff has brought against the Wisconsin Legislature in this case—that it has deprived him of his right to keep and bear arms and abridged or denied him his right to vote based on his race or a condition of previous servitude—are claims that courts, including this one, have dismissed in his other cases. Under these circumstances, the court considers whether it has the authority to dismiss the plaintiff's claims against the Wisconsin Legislature *sua sponte*—that is, without a motion from the Wisconsin Legislature.

A federal court may hear a case only if it has "subject-matter jurisdiction" over the claims. A federal court must "entertain a complaint seeking recovery under the Constitution or laws of the United States, unless the alleged federal claim either 'clearly appears to be immaterial and solely made for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" Ricketts v. Midwest Nat. Bank, 874 F.2d 1177, 1180 (7th Cir. 1989) (quoting Bell v. Hood, 327 U.S. 678, 681-82 (1946)).

> When a district court determines that a complaint is undermined by either of these deficiencies, the complaint must be dismissed for want of federal subject matter jurisdiction. *Id.* As the Supreme Court has emphasized, "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Hagans v. Lavine*, 415 U.S. 528, 536 [. . .] (1974) (quoting *Newbury Water Co. v. Newburyport*, 193 U.S. 561, 579 [. . .] (1904). Thus the determination of whether the merits of a complaint are sufficiently

> substantial is a threshold question which must be addressed by a district court before it can exercise jurisdiction and proceed to the legal determination under Fed. R. Civ. P. 12(b)(6) of whether the complaint states a claim. *Bell v. Hood*, 327 U.S. at 682-83 [. . .] ("Whether the complaint states a cause of action upon which relief can be granted is a question of law . . . which must be decided after and not before the court has assumed jurisdiction over the controversy.").

Id.

The problem, as the Seventh Circuit has noted, is that "[t]he upshot of this doctrine is that it places an obligation on the district court to determine its jurisdiction based on an assessment of the complaint that is confusingly similar to the analysis required by a motion under Fed. R. Civ. P. 12(b)(6)." Id. (citations omitted). Trying to clarify that confusion, the Seventh Circuit has articulated a three-tiered review process for determining whether a claim is so frivolous or without merit that it must be dismissed for lack of subject-matter jurisdiction. "At the first tier of review, the district court must assess the substantiality of the constitutional or federal statutory allegations of the complaint to determine . . . whether they are 'wholly insubstantial and frivolous.'" Id. at 1182.

> The Supreme Court has repeatedly employed exacting adjectives to define the degree of insubstantiality required before a case is to be dismissed on these grounds—a claim must be "wholly," "obviously," or "plainly" insubstantial or frivolous; it must be "absolutely devoid of merit" or "no longer open to discussion." *Hagans*, 415 U.S. at 536-39 [. . .] (citing cases). As these adjectives imply, insubstantiality dismissals should be applied only in extraordinary circumstances. "[I]f there is any foundation of plausibility to the federal claim federal jurisdiction exists . . . Jurisdiction is not lost because the court ultimately concludes that the federal claim is without merit." 13B Wright, Miller & Cooper, *Federal Practice and Procedure*, Jurisdiction 2d § 3564 (2d ed. 1984).

The district court's charge then, is to review the face of the complaint in light of the relevant constitutional or statutory provisions and the pertinent case law interpreting those provisions. *Crowley Cutlery* [*Co. v. United States*], 849 F.2d [273,] 278 [(7th Cir. 1988)]. This review may be conducted *sua sponte*, and may be done at an early stage in the proceedings. *Franklin v. State of Oregon, State Welfare Division*, 662 F.2d 1337, 1342 (9th Cir. 1981) (if the court lacks subject matter jurisdiction, summons need not be issued). It bears emphasizing that a plaintiff need only make a "short and plain statement of the claim showing that [he or she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While all complaints should be liberally construed in the spirit of Rule 8(f) ("All pleadings shall be so construed as to do substantial justice"), the mandate of *Haines v. Kerner*, 404 U.S. 519 [. . .] (1972), is applicable to a district court's substantiality review of a *pro se* plaintiff's complaint. Thus the district court is required to liberally construe the *pro se* plaintiff's pleadings, "however inartfully pleaded." *Estelle v. Gamble*, 429 U.S. 97 [. . .] (1976) (reaffirming the mandate of *Haines*). *See also Hughes v. Rowe*, 449 U.S. 5, 9 [. . .] (1980) (reviewing and applying the "settled law" arising from *Haines*). The purpose of this more solicitous review is to insure that *pro se* pleadings are given "fair and meaningful: consideration. *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir. 1984) (quoting *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982)).

Id. at 1182-83.

To determine whether to dismiss the plaintiff's claims against the Wisconsin Legislature *sua sponte* for lack of subject-matter jurisdiction, then, the court must liberally construe the claims, and decide whether they are "absolutely devoid of merit" or "no longer open to discussion," whether they are "wholly," "obviously" or "plainly" frivolous. The court concludes that they are.

As to the Wisconsin Legislature, the plaintiff alleges that it has passed laws that deprive him of his Second Amendment right to keep and bear arms. Dkt. No. 1 at 2. This complaint does not identify those laws. The plaintiff identified specific Wisconsin laws in at least one of his prior cases, but he does

not do so in this complaint. So the court is left to guess what laws the Wisconsin Legislature allegedly has passed that violate the Second Amendment. Even if the court relies on its knowledge of the plaintiff's previous cases, and assumes that the plaintiff is referring to the Wisconsin laws that make it a crime for felons to possess firearms, any claim that such laws violate the Second Amendment is "no longer open to discussion." Other courts have told the plaintiff that. They have told him about the Supreme Court's decision in Heller, 544 U.S. at 626, in which the Supreme Court held that limitations on a felon's Second Amendment rights were not unconstitutional. See also McDonald, 561 U.S. at 786. The Supreme Court and the Seventh Circuit have resolved the question of whether a law prohibiting felons from possessing firearms violates the Second Amendment—it *does not.* Even liberally construing the plaintiff's claim, the court finds that years of controlling case law mandate the conclusion that the plaintiff's Second Amendment claim is plainly insubstantial and frivolous.

The same is true of the plaintiff's claim that the Wisconsin Legislature violated his Fifteenth Amendment "right to vote for the free person of his choice for elected office." Dkt. No. 1 at 2. Again, the plaintiff has not identified which Wisconsin laws, or which provisions of the Wisconsin Constitution, he believes violate the Fifteenth Amendment. Even if he had specifically named the Wisconsin law that prohibits felons from voting until they have had their civil

rights restored,[1] or the Wisconsin constitutional provision that prohibits felons from standing for elected office, the superior courts have resolved those arguments, as well.

Forty-five years ago, in <u>Richardson v. Ramirez</u>, 418 U.S. 24, 56 (1974), the Supreme Court held that it did not violate the Constitution for a state to "exclude from [the voting] franchise convicted felons who have completed their sentences and paroles." Judge Stadtmueller told the plaintiff that back in 2008, as have other judges since. As for laws barring felons from running for elective office, "'[t]he right to run for or hold public office is not a fundamental right, and felons are not a suspect class; thus, a ban on felons running for elective office is valid if it is rationally related to a legitimate state interest." <u>Parker v. Lyons</u>, 757 F.3d 701, 707 (7th Cir. 2014) (citing <u>Brazil-Breashears v. Bilandic</u>, 53 F.3d 789, 792-93 (7th Cir. 1995); <u>Talley v. Lane</u>, 13 F.3d 1031, 1034 (7th Cir. 1994); <u>Clements v. Flashing</u>, 457 U.S. 957, 963 (1982)).

Nor has the plaintiff identified any discriminatory reason for the Wisconsin Legislature to pass these laws or ratify these constitutional provisions. The plaintiff asserts that he is a descendant of slaves, implying (although not stating) that he is African American. While he does not identify

---

[1] The plaintiff states that he finished serving his federal sentence years ago. If the plaintiff is alleging that Wisconsin violated his rights by passing a law prohibiting felons from voting until they have their civil rights restored, it is not clear to the court how the plaintiff has standing to challenge such a statute. Wis. Stat. §304.078(3) says, "[i]f a person is disqualified from voting under s 6.02(1)(b), his or her right to vote is restored when he or she completes the term of imprisonment or probation for the crime that led to the disqualification." If the plaintiff has completed his sentence, he is not barred from voting.

the laws or constitutional provisions at issue, he has not alleged that those laws or provisions apply only to African Americans, or only to persons of color. And he has not argued that the Wisconsin Legislature has no rational basis for prohibiting felons from voting or standing for elected office.

There may be other grounds for dismissal were the court to allow these claims to proceed—improper service, sovereign immunity, suit against an entity that is not suable under 42 U.S.C. §1983. But the question at this threshold level is whether the plaintiff's claims against the Wisconsin Legislature are so obviously frivolous that they are not substantial enough for the court to exercise subject-matter jurisdiction over them. Recognizing that the court should dismiss *sua sponte* on substantiality grounds only in extraordinary circumstances, the court concludes that the plaintiff's claims against the Wisconsin Legislature *are* so obviously frivolous that the court cannot exercise subject-matter jurisdiction over them.

The court will dismiss the claims against the Wisconsin Legislature.

## V.     The United States Congress's Motion to Consolidate

The court has issued separate orders dismissing the 2018 case and the May 2019 case. The court will deny the United States Congress's motion to consolidate as moot.

## VI.     The United States Congress's Motion Requesting an Order to Prohibit the Plaintiff From Filing Future *Pro Se* Suits

The right of access to federal courts is not absolute. In re Chapman, 328 F.3d 903, 905 (7th Cir 2003) (citing United States *ex rel.* Verdone v. Circuit Court for Taylor Cty., 73 F.3d 669, 674 (7th Cir. 1995)). Individuals are "only

19

entitled to meaningful access to the courts." Id. (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)). "Courts have ample authority to curb abusive filing practices by imposing a range of restrictions." Chapman v. Exec. Comm., 324 Fed. App'x 500, 502 (7th Cir. 2009) (citations omitted). The All Writs Act, 28 U.S.C. §1651(a), gives district courts the "inherent power to enter pre-filing orders against vexatious litigants." Orlando Residence Ltd. v. GP Credit Co., LLC, 609 F. Supp. 2d 813, 816–17 (E.D. Wis. 2009) (citing Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007)). "A filing restriction must, however, be narrowly tailored to the type of abuse, and must not bar the courthouse door absolutely." Chapman, 324 Fed. App'x at 502 (citations omitted). "Courts have consistently approved filing bars that permit litigants access if they cease their abusive filing practices," but have "rejected as overbroad filing bars in perpetuity." Id. (citations omitted).

The court agrees with the United States Congress that the plaintiff's filings have become abusive. He has brought seven iterations of the same claims in the last eleven and a half years—two in this year alone. Multiple judges have rejected his claims as meritless and frivolous, and the Seventh Circuit has affirmed on each appeal. Yet the plaintiff persists, each time consuming valuable judicial resources in an understaffed district with a heavy caseload. The court agrees that a sanction is appropriate.

In 1995, the Seventh Circuit decided Support Systems Intern., Inc. v. Mack, 45 F.3d 185 (7th Cir. 1995). The author of the decision, Judge Terence Evans, thoroughly analyzed situations such as this one, where a litigant has

engaged in vexatious and abusive behavior. Judge Evans explained that once a court determined that a litigant was abusing the judicial system, it needed to determine "the most effective form in which to exercise [its authority to curb abuse], consistent with the Supreme Court's admonition that any sanction imposed by a federal court for the abuse of its processes be tailored to the abuse." Id. at 186 (citing In re Anderson, 511 U.S. 364 (1994); Sassower v. Mead Data Central, Inc., 510 U.S. 4 (1993)). Judge Evans stated that to make this determination, a court "should consider a range of possible alternatives." Id. He noted that neither monetary sanctions nor "repeated rejection of his groundless, fraudulent filings" had stopped Mack. Id. He also observed that courts frequently imposed a sanction enjoining a frivolous litigant from filing new complaints or pleadings without the court's permission. Id. Because that latter sanction put the burden on the court to review each new pleading, and "allow[ed] the barrage to continue, just with different labels on the filings and perhaps with fewer judges having to read the filings," the Mack court elected to direct the clerks of all federal courts in the circuit "to return any unfiled papers" that Mack tried to file, "unless and until he pays in full the sanctions that have been imposed against him." Id. The court made an exception for criminal cases in which Mack might be a defendant and for *habeas* applications. Id. It also provided that once two years had expired, Mack could file a motion asking the Seventh Circuit to modify or rescind the order. Id.

The United States Congress's motion seeks only one sanction—a permanent bar to the plaintiff ever filing any *pro se* pleading in this district.

The plaintiff objects that the request amounts "to strip[ping the] plaintiff" of his First Amendment right to petition for redress of grievances. Dkt. No. 6 at 8. The court agrees. A permanent bar to any pleadings is not a sanction narrowly tailored to addressing the particular abuse in which the plaintiff has engaged. There are more narrowly tailored sanctions available.

One option is for the court to impose a monetary sanction, and to bar the plaintiff from filing any further pleadings or lawsuits related to the plaintiff's claims based on his status as the descendant of slaves and his status as a convicted felon until he pays the monetary sanction. This option would not constitute a permanent bar, but it also would not prevent the plaintiff from re-filing the same claims once he pays the sanction. And as he notes in his response to the United States Congress's motion, the plaintiff "pays the hundreds of dollars filing fee each time he files a grievance against the government." Id. In the span of three months this year, the plaintiff filed two civil cases, each carrying a $400 filing fee. The court would have to impose a substantial monetary penalty—well in excess of $800—to curb the plaintiff's abuse.

The court could enter an order barring the plaintiff from filing any pleadings or complaints raising claims based on his status as a descendent of slaves or his status as a convicted felon. The bar would relate only to claims that courts in this district have rejected as meritless on seven occasions. And the court could give the plaintiff the opportunity to seek relief from the bar after a specified time.

The plaintiff contends that "[e]ven Pharoah did not limit the number of times Moses could present his grievance; is the U.S.A. Congress less fair to descendants of American Slaves than Pharoah was to the Jews?" Id. Whatever ancient Egyptian laws may have said on the subject, modern American law prohibits a party from raising the same claims against the same parties over and over. The doctrine of *res judiciata* "bars an action if there was a final judgment on the merits in an earlier case and both the parties and claims in the two lawsuits are the same." Bernstein v. Bankert, 733 F.3d 190, 224 (7th Cir. 2013) (citations omitted). The doctrine of claim preclusion, "which operates to conserve judicial resources and promote finality, applies when a case involves the same parties and the same set of operative facts as an earlier one that was decided on the merits." Id. at 225 (citation omitted). Finally, the doctrine of issue preclusion, "a narrower doctrine than claim preclusion, prevents litigants from re-litigating an issue that has already been decided in a previous judgment." Id. (citation omitted).

Even if the claims the plaintiff has brought in this lawsuit had merit (and they don't), future attempts to bring the same claims likely would run afoul of one or more of these doctrines. If the plaintiff tried to bring a new lawsuit with identical claims that he'd raised in a prior suit against the same defendants he'd sued in a prior suit, he would be barred by *res judicata*. If he tried to bring a new lawsuit against parties he'd sued before, involving the same set of operative facts (his status as a descendant of slaves and a convicted felon), the suit would be barred by claim preclusion. If he tried to bring a new lawsuit

raising the identical issue to an issue he'd raised in a prior lawsuit, the suit would be barred by issue preclusion.

Given this, it seems to the court that a bar preventing the plaintiff from filing further lawsuits grounded in his status as the descendant of slaves or his status as a convicted felon, containing a provision allowing the plaintiff to ask the court to review or reconsider the bar after a certain period, would be a sanction narrowly tailored to address the specific abuse in which the plaintiff has engaged.

**VII.  Conclusion**

The court **DENIES AS MOOT** the United States Congress's motion to consolidate cases. Dkt. No. 5(I).

The court **GRANTS** the United States Congress's motion to dismiss. Dkt. No. 5(II).

The court **GRANTS IN PART** the United States Congress's motion requesting an order prohibiting the plaintiff from initiating further *pro se* suits. Dkt. No. 5(III).

The court **ORDERS** that the plaintiff is **BARRED** from filing any further pleadings or lawsuits in the Eastern District of Wisconsin bringing claims (in any form) arising out of his status as a descendant of slaves or his status as a convicted felon. This includes any claims that the federal government or its agencies, officials or representatives or the State of Wisconsin or its agencies, officials or representatives have passed laws or ratified constitutional provisions regulating the conduct of convicted felons in violation of the laws or

Constitution of the United States. The court **ORDERS** that the plaintiff is authorized to submit to this court, no earlier than **three years** from the date of this order, a motion to modify or rescind the order. The court **ORDERS** that if the plaintiff violates this bar, he may be subject to sanctions imposed by any judge in this district.

The court **ORDERS** that the claims against the United States Congress and the Wisconsin Legislature are **DISMISSED**, and that this case is **DISMISSED**. The court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 14th day of November, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**