# FedEx Office

Address:                  5353 N PORT
                          WASHINGTON RD
                          MILWAUKEE
                          WI 53217
Location:                 UESK
Device ID:                -BTC01
Transaction:              940339943769

---

**FedEx Express Saver**
Tracking Number:
  275301953647     0.60 lb (S)        10.80
    Declared Value   0
Recipient Address:

    Asst.United States Attorney
    517 E WISCONSIN AVE RM 530
    MILWAUKEE, WI 53202-4509
    0000000000

Scheduled Delivery Date 7/13/2022

Pricing option:
  ONE RATE

Package Information:
  FedEx Envelope

---

**FedEx Express Saver**
Tracking Number:
  275302052285     0.60 lb (S)        10.80
    Declared Value   0
Recipient Address:

    WI AG Josh Kaul
    State Capitol Room 114 East
    Madison, WI 53702
    0000000000

Scheduled Delivery Date 7/13/2022

Pricing option:
  ONE RATE

Package Information:
  FedEx Envelope

                    Shipment subtotal:     $21.60

                         Total Due:     $21.60

                    (S) CreditCard:      $21.60
                    ***********4462

# A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARRY J. SMITH, SR.,

           Plaintiff,

    v.

                          Case No. 19-cv-1001-pp

UNITED STATES CONGRESS,
and WISCONSIN LEGISLATURE,

           Defendants.

---

**ORDER DENYING AS MOOT UNITED STATES CONGRESS'S MOTION TO
CONSOLIDATE (DKT. NO. 5(I)), GRANTING MOTION TO DISMISS UNITED
STATES CONGRESS AS A DEFENDANT (DKT. NO. 5(II)), GRANTING IN
PART UNITED STATES CONGRESS'S MOTION FOR AN ORDER
PRECLUDING PLAINTIFF FROM INITIATING FURTHER *PRO SE* SUITS
(DKT. NO. 5(III)) AND DISMISSING CASE**

---

On July 15, 2019, the plaintiff, representing himself, filed a civil rights
complaint against the United States Congress and the Wisconsin Legislature.
Dkt. No. 1. He alleged that his 1990 conviction for threatening the life of a
federal judge subjected him to unconstitutional slavery or involuntary
servitude in violation of the Thirteenth Amendment, because he is the
descendant of slaves. Id. at 1. He alleged that he completed serving his term of
"Thirteenth Amendment enslavement" long ago and that he is entitled to
"complete restoration of his citizenship." Id. at 2. The complaint alleged that
the defendants have deprived him of various constitutional rights, including his
right to be free from slavery under the Thirteenth Amendment, his Second
Amendment right to keep and bear arms and his Fifteenth Amendment right
"to vote for the free person of his choice for elected office." Id. The complaint

1

alleged that the defendants "have enacted unconstitutional laws to conceal that they have denied plaintiff's citizenship rights except such as those which they choose to grant him." Id. It also alleged that the defendants acted "against plaintiff's citizenship rights under the Dred Scott case." Id. As relief, the plaintiff "demands his full and unabridged United States of America Citizenship rights be immediately restored." Id.

One of the defendants, the United States Congress, filed a motion to consolidate cases, to dismiss and to preclude the plaintiff from initiating further *pro se* suits. Dkt. No. 5. The motion asks the court to consolidate this case with Smith v. U.S. Congress, Case No. 18-cv-988 and Smith v. U.S. Congress, Case No. 19-cv-671. Id. at 6. It also asks the court to bar the plaintiff from filing any further cases, given his history of litigation on the claims he raised in the complaint.

The court will deny as moot the United States Congress's motion to consolidate cases, because in separate orders it already has dismissed the two cases to which the motion refers. The court will grant the motion to dismiss the United States Congress as a defendant. The court also will grant in part the United States Congress's request to bar the plaintiff from filing further cases.

The other defendant, the Wisconsin Legislature, has not appeared. Because the court finds that the plaintiff's claims against the legislature are obviously frivolous, the court will dismiss those claims *sua sponte* for lack of subject-matter jurisdiction.

2

## I.    Litigation History

The plaintiff's history of litigation in this district dates back more than thirty years. In 1987, he filed a housing discrimination lawsuit, <u>Smith v. National Corp.</u>, Case No. 87-cv-1300. United States District Judge John Reynolds dismissed that lawsuit, and denied the plaintiff's motion to reconsider on October 9, 1989. <u>Id.</u> at Dkt. No. 101.

> [A]t 2:20 a.m. on December 29, 1989, Arthur Roby, a Security Complaint Assistant for the Milwaukee office of the FBI, received a telephone call from [the plaintiff]. [The plaintiff] threatened to kill Judge Reynolds in the morning at the courthouse with a 16th century Jewish sword. [The plaintiff] said that he was angry with Judge Reynolds for dismissing his suit, and he provided his address. [The plaintiff] also indicated that he was calling to warn the FBI so that it could stop him.

<u>United States v. Smith</u>, Case No. 90-2368, 1991 WL 36269, at *1 (7th Cir. March 18, 1991). A jury convicted the plaintiff of threatening the life of a federal judge in violation of 18 U.S.C. §115(a)(1)(B), and Judge J. P. Stadtmueller sentenced him to serve a twelve-month sentence in custody followed by four years of supervised release (later reduced to three years). <u>Id.</u> The Seventh Circuit affirmed the conviction and sentence. <u>Id.</u> at *4.

In the last eleven and a half years, courts in this district have dismissed six civil complaints from the plaintiff, all alleging various violations of the plaintiff's constitutional rights due to his status as a descendant of slaves and his status as a convicted felon. <u>Smith v. United States</u>, Case No. 08-cv-262; <u>Smith v. President of the United States</u>, Case No. 08-cv-956; <u>Smith v. United States Congress</u>, Case No. 13-cv-206; <u>Smith v. United States</u>, Case No. 17-cv-

1419; <u>Smith v. United States Congress</u>, Case No. 18-cv-988; <u>Smith v. United States Congress</u>, Case No. 19-cv-671.

In the first case, <u>Smith v. United States</u>, Case No. 08-cv-262, the plaintiff sued the United States and the State of Wisconsin, challenging the fact that his conviction prevented him from running for alderman. He claimed that he was entitled to relief under the due process and equal protection clauses. <u>Id.</u> at Dkt. No. 3. Judge Rudolph T. Randa dismissed the case, explaining to the plaintiff that the legislature had a rational basis for preventing convicted felons from running for office, that he'd sued the wrong defendants (because the legislatures, not the governments, made and enforced the laws), and that portions of his claims were "patently frivolous." <u>Id.</u> at 1-3.

In the second case, <u>Smith v. President of the United States</u>, the plaintiff sued the President of the United States, the governor of Wisconsin and the mayor of Milwaukee, alleging that he had been "denied public employment opportunities, the right to bear a firearm and the right to 'vote for himself as a candidate' due to 'his previous conditions of Thirteenth Amendment Slavery.'" <u>Smith</u>, Case No. 08-cv-956, 2009 WL 2591624, *2 (E.D. Wis.). Judge J. P. Stadtmueller explained to the plaintiff that the Constitution does not prevent the federal or state governments from limiting a convicted felon's civil rights, including the right to carry a firearm the right to vote and the right to hold public office. <u>Id.</u> (citing <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570, 626-627 (2008); <u>Richardson v. Ramirez</u>, 418 U.S. 24, 56 (1974); and <u>Romer v. Evans</u>, 517 U.S. 620, 624 (1996)). Judge Stadtmueller pointed out that "[t]hese

4

limitations on one's rights as a citizen are well-recognized collateral consequences of a felony conviction, and the constitutionality of those long-standing consequences are not legitimately disputed." Id.

In the third case, the plaintiff sued the United States Congress, the President of the United States, the governor of Wisconsin, the mayor of Milwaukee and the Social Security Administration. Smith v. United States Congress, Case No. 13-cv-206. He alleged that the Social Security Administration had refused to allow him to participate in a program due to racism, and argued that he was being denied a laundry list of constitutional rights "based on a pattern and practice of Racism directed against him as a descendent of the slaves described by United States Supreme Court Chief Justice Taney in Dred Scott v. Sanford, 60 U.S. (19 How.) 393, 15 L. Ed. 691." Id. at Dkt. No. 1. Judge Charles N. Clevert, Jr. dismissed all the defendants except the Social Security Administration, noting that the plaintiff had made no specific allegations against any of the other defendants. Id. at Dkt. No. 20. Subsequently, when the plaintiff failed to amend his complaint as to the Social Security Administration, the court dismissed the entire case as frivolous. Id. at Dkt. No. 29.

Despite these decisions, the plaintiff filed a fourth case in 2017, again naming the United States of America and the State of Wisconsin (the defendants Judge Randa had told him were not appropriate parties), alleging that he was being denied a long list of constitutional rights because of his status as a descendant of slaves. Smith v. United States, Case No. 17-cv-1419.

5

Magistrate Judge David Jones dismissed this case for lack of subject-matter jurisdiction (as to the State of Wisconsin) and for failure to state a claim, reiterating the rulings of the prior judges and going into more detail about some of the plaintiff's specific allegations not addressed by the other judges. Id. at Dkt. No. 16.

The plaintiff filed his fifth case in 2018, again suing the United States of America and the State of Wisconsin. Smith v. United States Congress, Case No. 18-cv-988. Just under two weeks after he filed the complaint, he amended it, naming the United States Congress and the Wisconsin Legislature as defendants. Id. at Dkt. No. 3. In the amended complaint, the plaintiff argued that the Commerce Clause to the United States Constitution did not authorize Congress to regulate his right to have a firearm, and that "Amendment 3(2)(3)" of the Wisconsin Constitution unconstitutionally barred him from running for office. Id. at Dkt. No. 3. The amended complaint consisted of only two paragraphs.

The United States Congress filed a motion to dismiss, id. at dkt. no. 6; the Wisconsin Legislature did not. Judge Joseph granted the Congress's motion to dismiss the amended complaint. Id. at Dkt. No. 15. The plaintiff appealed. Id. at Dkt. No. 17. The Seventh Circuit dismissed the appeal, stating that Judge Joseph did not have the authority to dismiss the case as to both defendants because the Wisconsin Legislature had not consented to her authority to issue a final decision. Id. at Dkt. No. 24. Accordingly, Judge Joseph vacated her order, and issued a report recommending that this court

6

dismiss the case. Id. at Dkt. No. 25. She also recommended that this court deny the plaintiff's motion to file a second amended complaint (id. at dkt. no. 21), which he filed *after* Judge Joseph had dismissed his original complaint. This court has issued an order dismissing Case No. 18-cv-988 and adopting Judge Joseph's recommendation to deny the plaintiff's motion for leave to file a second amended complaint in that case.

The plaintiff filed the sixth case in May of this year, again suing the United States Congress and the Wisconsin Legislature. Smith v. United States Congress, Case No. 19-cv-671. The allegations in that complaint were identical to the allegations he sought to bring in the proposed second amended complaint in the 2018 case—that the federal and state statutes prohibiting felons from possessing firearms constituted unconstitutional bills of attainder under Article I, §9, Clause 3 of the U.S. Constitution, as did the provision of the Wisconsin Constitution that prohibits felons from holding elected office unless pardoned, and that Wisconsin's prohibition on his right to vote violated the Fifteenth and Thirteenth Amendments. Id. at Dkt. No. 1. Both the United States Congress and the Wisconsin Legislature filed motions to dismiss. The court has issued an order dismissing that case for failure to state a claim.

## II.    The Current Complaint

The claims the plaintiff has raised in this seventh complaint are not new. Other judges have ruled on them, and this court has ruled on them. He asserts that his conviction and sentencing for threatening Judge Reynolds constituted a violation of the Thirteenth Amendment's prohibition against slavery and

7

involuntary servitude. He alleges that because he finished serving that sentence a long time ago, he is entitled to the restoration of all his civil rights (including his right to keep and bear arms under the Second Amendment and his rights under the Fifteenth Amendment). Finally, he appears to assert that these alleged deprivations of his rights violate the Supreme Court's decision in Dred Scott v. Sanford, 60 U.S. 393 (1857).

## III. The United States Congress's Motion to Dismiss

The United States Congress argues that the court should dismiss the complaint because the United States Congress did not waive its sovereign immunity, dkt. no. 5 at 7, and because it fails to state a claim upon which this court may grant relief, id. at 7-8. The Congress appears to acknowledge that it is not the only defendant named in the complaint. id. at 8 n.4 (asserting that the plaintiff's challenge to the Wisconsin law prohibiting felons from running for elected office "is a claim directed at the State of Wisconsin, rather than the U.S. Congress"). The court assumes that the United States Congress is asking the court to dismiss it as a defendant, and is not seeking dismissal on behalf of the Wisconsin Legislature.

### A. Sovereign Immunity

The United States Congress has asked the court to dismiss it as a defendant because it has not waived its sovereign immunity. Dkt. No. 5. The court agrees that it does not have jurisdiction to entertain any claims against the United States Congress. The plaintiff has presented no evidence indicating that the United States Congress has waived sovereign immunity. F.D.I.C. v.

8

Meyer, 510 U.S. 471, 475 (1994); Joseph v. Bd. of Regents of the Univ. of Wis. Sys., 432 F.3d 746, 748 (7th Cir. 2005). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Meyer, 510 U.S. at 475. "Sovereign immunity is jurisdictional in nature," id., which means that if the Congress has not waived sovereign immunity, this court does not have jurisdiction over the claim against it.

### B. Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A.,

9

614 F.3d 400, 404-05 (7th Cir. 2010)). "[T]he proper question to ask is still could these things have happened, not did they happen." Id. at 827 (internal quotation and citation omitted). The plaintiff "need not 'show' anything to survive a motion under Rule 12(b)(6)—he need only allege." Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

The plaintiff asserts that his conviction and sentence for threatening Judge Reynolds violated the Thirteenth Amendment. Regarding the United States Congress, the court construes this as a claim that in passing the law criminalizing threats on the life of a federal judge, the Congress violated the Thirteenth Amendment. That claim has no merit. The Thirteenth Amendment states that "[n]either slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted,* shall exist within the United States . . . ." The amendment specifically carves out lawful convictions from the definitions of "slavery" and "involuntary servitude." "It is clear that [the Thirteenth Amendment], besides abolishing forever slavery and involuntary servitude within the United States, gives power to congress to protect all persons within the jurisdiction of the United States from being in any way subjected to slavery or involuntary servitude, *except as a punishment for* crime . . ." United States v. Harris, 106 U.S. 629, 640 (1883) (emphasis added). The Thirteenth Amendment did not prohibit Congress from passing a law making it a crime to threaten the life of a federal judge, and the plaintiff was duly convicted of and punished for that crime; the appellate court affirmed the

10

conviction and sentence. The complaint does not state a claim that the United States Congress has violated the Thirteenth Amendment.

The plaintiff contends that he is a direct descendant of slaves; he appears to believe that because it was unlawful for his ancestors to be enslaved, the United States Congress had no authority to deprive him of his Second Amendment right to keep and bear arms by making it a crime for felons to possess firearms. This claim is meritless for several reasons. First, there is no relationship between the fact that the plaintiff's ancestors were slaves and the fact that it is a federal crime for felons to possess firearms. It is a crime for felons who cannot show that their ancestors were slaves to possess firearms. The plaintiff has cited no authority for this claim, because there isn't any.

Second, the plaintiff has not alleged that he has been convicted of being a felon in possession in violation of 18 U.S.C. §922(g)(1), the federal felon-in-possession statute.

Third, to the extent that the plaintiff argues that Congress has violated his Second Amendment rights by passing a law that permanently bars felons such as himself for possessing firearms, more than one judge in this district has told the plaintiff that he is mistaken; Judges Stadtmueller and Jones, as well as this court, have cited Heller, 544 U.S. at 626, in which the Supreme Court held that limitations on a felon's Second Amendment rights were not unconstitutional. See also McDonald v. City of Chi., Ill., 561 U.S. 742, 786 (2010).

11

The plaintiff asserts that he is entitled to restoration of his Fifteenth Amendment right to vote for the free person of his choice for elected office. The United States Congress correctly points out that to the extent that this is a claim that the plaintiff has been denied his right to run for elected office, that claim is directed at the Wisconsin Legislature; there is no federal statute prohibiting felons from running for office.

Finally, the plaintiff's assertion that the U.S. Congress has passed laws that somehow have violated the rights accorded to him by the Supreme Court's decision in Dred Scott v. Sandford is mystifying. The Dred Scott case held that "the Constitution did not recognize black Americans as citizens of the United States or their own State." McDonald, 561 U.S. at 807-808. The court assumes that the plaintiff is African American. If that is true, Dred Scott afforded him *no* civil rights. It *denied* African Americans the rights accorded to other citizens. Thankfully, section 1 of the Fourteenth Amendment overruled the holding in Dred Scott, providing that any person born or naturalized in the United States is a citizen of the United States and of the state in which he resides. Id. at 807. The plaintiff has not alleged that the United States Congress has passed any laws that deny him his Fourteenth Amendment rights.

The court will dismiss the United States Congress as a defendant, because the complaint fails to state any claims against it for which this court may grant relief.

12

## IV. The Claims Against the Wisconsin Legislature

The Wisconsin Legislature has not filed an appearance or answered the complaint, although the plaintiff filed the complaint four months ago. It is possible that the plaintiff has not properly served the legislature. The court notes that on the last page of the complaint, the plaintiff certified that he had "either personally served or served by United States mail, postage prepaid," a copy of the complaint on "Wisconsin Attorney General Josh Kaul, 114 East State Capitol, Madison, WI 53702." Dkt. No. 1 at 3. In one of the plaintiff's previous cases, the Wisconsin Legislature pointed out that state law (Wis. Stat. §801.11(3)) requires personal service, not mail. Smith v. United States Congress, Case No. 18-cv-988, Dkt. No. 28 at 4-5. But the Wisconsin Legislature has not filed a motion under Fed. R. Civ. P. 12(b)(5) to dismiss for failure to properly serve.

Federal Rule of Civil Procedure 4(m) says that if a plaintiff doesn't serve a defendant within ninety days after the complaint is filed, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time." More than ninety days has passed since the plaintiff filed his complaint. If he has not effected proper service on the Wisconsin Legislature, the court must dismiss, unless the plaintiff can show good cause for his failure to properly serve the legislature. But the court does not know whether the plaintiff has effected proper service.

13

As the court will discuss below, it believes the plaintiff has abused the federal judicial system by repeatedly raising the same claims over a period of years but characterizing them differently and asserting them against different defendants. The claims the plaintiff has brought against the Wisconsin Legislature in this case—that it has deprived him of his right to keep and bear arms and abridged or denied him his right to vote based on his race or a condition of previous servitude—are claims that courts, including this one, have dismissed in his other cases. Under these circumstances, the court considers whether it has the authority to dismiss the plaintiff's claims against the Wisconsin Legislature *sua sponte*—that is, without a motion from the Wisconsin Legislature.

A federal court may hear a case only if it has "subject-matter jurisdiction" over the claims. A federal court must "entertain a complaint seeking recovery under the Constitution or laws of the United States, unless the alleged federal claim either 'clearly appears to be immaterial and solely made for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" Ricketts v. Midwest Nat. Bank, 874 F.2d 1177, 1180 (7th Cir. 1989) (quoting Bell v. Hood, 327 U.S. 678, 681-82 (1946)).

> When a district court determines that a complaint is undermined by either of these deficiencies, the complaint must be dismissed for want of federal subject matter jurisdiction. *Id.* As the Supreme Court has emphasized, "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Hagans v. Lavine*, 415 U.S. 528, 536 [. . .] (1974) (quoting *Newbury Water Co. v. Newburyport*, 193 U.S. 561, 579 [. . .] (1904). Thus the determination of whether the merits of a complaint are sufficiently

14

substantial is a threshold question which must be addressed by a
district court before it can exercise jurisdiction and proceed to the
legal determination under Fed. R. Civ. P. 12(b)(6) of whether the
complaint states a claim. *Bell v. Hood*, 327 U.S. at 682-83 [. . .]
("Whether the complaint states a cause of action upon which relief
can be granted is a question of law . . . which must be decided after
and not before the court has assumed jurisdiction over the
controversy.").

Id.

The problem, as the Seventh Circuit has noted, is that "[t]he upshot of
this doctrine is that it places an obligation on the district court to determine its
jurisdiction based on an assessment of the complaint that is confusingly
similar to the analysis required by a motion under Fed. R. Civ. P. 12(b)(6)." Id.
(citations omitted). Trying to clarify that confusion, the Seventh Circuit has
articulated a three-tiered review process for determining whether a claim is so
frivolous or without merit that it must be dismissed for lack of subject-matter
jurisdiction. "At the first tier of review, the district court must assess the
substantiality of the constitutional or federal statutory allegations of the
complaint to determine . . . whether they are 'wholly insubstantial and
frivolous.'" Id. at 1182.

> The Supreme Court has repeatedly employed exacting adjectives to
> define the degree of insubstantiality required before a case is to be
> dismissed on these grounds—a claim must be "wholly," "obviously,"
> or "plainly" insubstantial or frivolous; it must be "absolutely devoid
> of merit" or "no longer open to discussion." *Hagans*, 415 U.S. at 536-
> 39 [. . .] (citing cases). As these adjectives imply, insubstantiality
> dismissals should be applied only in extraordinary circumstances.
> "[I]f there is any foundation of plausibility to the federal claim federal
> jurisdiction exists . . . Jurisdiction is not lost because the court
> ultimately concludes that the federal claim is without merit." 13B
> Wright, Miller & Cooper, *Federal Practice and Procedure*,
> Jurisdiction 2d § 3564 (2d ed. 1984).

15

The district court's charge then, is to review the face of the complaint in light of the relevant constitutional or statutory provisions and the pertinent case law interpreting those provisions. *Crowley Cutlery [Co. v. United States]*, 849 F.2d [273,] 278 [(7th Cir. 1988)]. This review may be conducted *sua sponte*, and may be done at an early stage in the proceedings. *Franklin v. State of Oregon, State Welfare Division*, 662 F.2d 1337, 1342 (9th Cir. 1981) (if the court lacks subject matter jurisdiction, summons need not be issued). It bears emphasizing that a plaintiff need only make a "short and plain statement of the claim showing that [he or she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While all complaints should be liberally construed in the spirit of Rule 8(f) ("All pleadings shall be so construed as to do substantial justice"), the mandate of *Haines v. Kerner*, 404 U.S. 519 [. . .] (1972), is applicable to a district court's substantiality review of a *pro se* plaintiff's complaint. Thus the district court is required to liberally construe the *pro se* plaintiff's pleadings, "however inartfully pleaded." *Estelle v. Gamble*, 429 U.S. 97 [. . .] (1976) (reaffirming the mandate of *Haines*). *See also Hughes v. Rowe*, 449 U.S. 5, 9 [. . .] (1980) (reviewing and applying the "settled law" arising from *Haines*). The purpose of this more solicitous review is to insure that *pro se* pleadings are given "fair and meaningful: consideration. *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir. 1984) (quoting *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982)).

Id. at 1182-83.

To determine whether to dismiss the plaintiff's claims against the Wisconsin Legislature *sua sponte* for lack of subject-matter jurisdiction, then, the court must liberally construe the claims, and decide whether they are "absolutely devoid of merit" or "no longer open to discussion," whether they are "wholly," "obviously" or "plainly" frivolous. The court concludes that they are.

As to the Wisconsin Legislature, the plaintiff alleges that it has passed laws that deprive him of his Second Amendment right to keep and bear arms. Dkt. No. 1 at 2. This complaint does not identify those laws. The plaintiff identified specific Wisconsin laws in at least one of his prior cases, but he does

16

not do so in this complaint. So the court is left to guess what laws the Wisconsin Legislature allegedly has passed that violate the Second Amendment. Even if the court relies on its knowledge of the plaintiff's previous cases, and assumes that the plaintiff is referring to the Wisconsin laws that make it a crime for felons to possess firearms, any claim that such laws violate the Second Amendment is "no longer open to discussion." Other courts have told the plaintiff that. They have told him about the Supreme Court's decision in Heller, 544 U.S. at 626, in which the Supreme Court held that limitations on a felon's Second Amendment rights were not unconstitutional. See also McDonald, 561 U.S. at 786. The Supreme Court and the Seventh Circuit have resolved the question of whether a law prohibiting felons from possessing firearms violates the Second Amendment—it *does not*. Even liberally construing the plaintiff's claim, the court finds that years of controlling case law mandate the conclusion that the plaintiff's Second Amendment claim is plainly insubstantial and frivolous.

The same is true of the plaintiff's claim that the Wisconsin Legislature violated his Fifteenth Amendment "right to vote for the free person of his choice for elected office." Dkt. No. 1 at 2. Again, the plaintiff has not identified which Wisconsin laws, or which provisions of the Wisconsin Constitution, he believes violate the Fifteenth Amendment. Even if he had specifically named the Wisconsin law that prohibits felons from voting until they have had their civil

17

rights restored,[1] or the Wisconsin constitutional provision that prohibits felons from standing for elected office, the superior courts have resolved those arguments, as well.

Forty-five years ago, in <u>Richardson v. Ramirez</u>, 418 U.S. 24, 56 (1974), the Supreme Court held that it did not violate the Constitution for a state to "exclude from [the voting] franchise convicted felons who have completed their sentences and paroles." Judge Stadtmueller told the plaintiff that back in 2008, as have other judges since. As for laws barring felons from running for elective office, "'[t]he right to run for or hold public office is not a fundamental right, and felons are not a suspect class; thus, a ban on felons running for elective office is valid if it is rationally related to a legitimate state interest." <u>Parker v. Lyons</u>, 757 F.3d 701, 707 (7th Cir. 2014) (citing <u>Brazil-Breashears v. Bilandic</u>, 53 F.3d 789, 792-93 (7th Cir. 1995); <u>Talley v. Lane</u>, 13 F.3d 1031, 1034 (7th Cir. 1994); <u>Clements v. Flashing</u>, 457 U.S. 957, 963 (1982)).

Nor has the plaintiff identified any discriminatory reason for the Wisconsin Legislature to pass these laws or ratify these constitutional provisions. The plaintiff asserts that he is a descendant of slaves, implying (although not stating) that he is African American. While he does not identify

---

[1] The plaintiff states that he finished serving his federal sentence years ago. If the plaintiff is alleging that Wisconsin violated his rights by passing a law prohibiting felons from voting until they have their civil rights restored, it is not clear to the court how the plaintiff has standing to challenge such a statute. Wis. Stat. §304.078(3) says, "[i]f a person is disqualified from voting under s 6.02(1)(b), his or her right to vote is restored when he or she completes the term of imprisonment or probation for the crime that led to the disqualification." If the plaintiff has completed his sentence, he is not barred from voting.

the laws or constitutional provisions at issue, he has not alleged that those laws or provisions apply only to African Americans, or only to persons of color. And he has not argued that the Wisconsin Legislature has no rational basis for prohibiting felons from voting or standing for elected office.

There may be other grounds for dismissal were the court to allow these claims to proceed—improper service, sovereign immunity, suit against an entity that is not suable under 42 U.S.C. §1983. But the question at this threshold level is whether the plaintiff's claims against the Wisconsin Legislature are so obviously frivolous that they are not substantial enough for the court to exercise subject-matter jurisdiction over them. Recognizing that the court should dismiss *sua sponte* on substantiality grounds only in extraordinary circumstances, the court concludes that the plaintiff's claims against the Wisconsin Legislature *are* so obviously frivolous that the court cannot exercise subject-matter jurisdiction over them.

The court will dismiss the claims against the Wisconsin Legislature.

## V. The United States Congress's Motion to Consolidate

The court has issued separate orders dismissing the 2018 case and the May 2019 case. The court will deny the United States Congress's motion to consolidate as moot.

## VI. The United States Congress's Motion Requesting an Order to Prohibit the Plaintiff From Filing Future *Pro Se* Suits

The right of access to federal courts is not absolute. In re Chapman, 328 F.3d 903, 905 (7th Cir 2003) (citing United States *ex rel.* Verdone v. Circuit Court for Taylor Cty., 73 F.3d 669, 674 (7th Cir. 1995)). Individuals are "only

19

entitled to meaningful access to the courts." Id. (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)). "Courts have ample authority to curb abusive filing practices by imposing a range of restrictions." Chapman v. Exec. Comm., 324 Fed. App'x 500, 502 (7th Cir. 2009) (citations omitted). The All Writs Act, 28 U.S.C. §1651(a), gives district courts the "inherent power to enter pre-filing orders against vexatious litigants." Orlando Residence Ltd. v. GP Credit Co., LLC, 609 F. Supp. 2d 813, 816–17 (E.D. Wis. 2009) (citing Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007)). "A filing restriction must, however, be narrowly tailored to the type of abuse, and must not bar the courthouse door absolutely." Chapman, 324 Fed. App'x at 502 (citations omitted). "Courts have consistently approved filing bars that permit litigants access if they cease their abusive filing practices," but have "rejected as overbroad filing bars in perpetuity." Id. (citations omitted).

The court agrees with the United States Congress that the plaintiff's filings have become abusive. He has brought seven iterations of the same claims in the last eleven and a half years—two in this year alone. Multiple judges have rejected his claims as meritless and frivolous, and the Seventh Circuit has affirmed on each appeal. Yet the plaintiff persists, each time consuming valuable judicial resources in an understaffed district with a heavy caseload. The court agrees that a sanction is appropriate.

In 1995, the Seventh Circuit decided Support Systems Intern., Inc. v. Mack, 45 F.3d 185 (7th Cir. 1995). The author of the decision, Judge Terence Evans, thoroughly analyzed situations such as this one, where a litigant has

20

engaged in vexatious and abusive behavior. Judge Evans explained that once a court determined that a litigant was abusing the judicial system, it needed to determine "the most effective form in which to exercise [its authority to curb abuse], consistent with the Supreme Court's admonition that any sanction imposed by a federal court for the abuse of its processes be tailored to the abuse." Id. at 186 (citing In re Anderson, 511 U.S. 364 (1994); Sassower v. Mead Data Central, Inc., 510 U.S. 4 (1993)). Judge Evans stated that to make this determination, a court "should consider a range of possible alternatives." Id. He noted that neither monetary sanctions nor "repeated rejection of his groundless, fraudulent filings" had stopped Mack. Id. He also observed that courts frequently imposed a sanction enjoining a frivolous litigant from filing new complaints or pleadings without the court's permission. Id. Because that latter sanction put the burden on the court to review each new pleading, and "allow[ed] the barrage to continue, just with different labels on the filings and perhaps with fewer judges having to read the filings," the Mack court elected to direct the clerks of all federal courts in the circuit "to return any unfiled papers" that Mack tried to file, "unless and until he pays in full the sanctions that have been imposed against him." Id. The court made an exception for criminal cases in which Mack might be a defendant and for *habeas* applications. Id. It also provided that once two years had expired, Mack could file a motion asking the Seventh Circuit to modify or rescind the order. Id.

The United States Congress's motion seeks only one sanction—a permanent bar to the plaintiff ever filing any *pro se* pleading in this district.

21

The plaintiff objects that the request amounts "to strip[ping the] plaintiff" of his First Amendment right to petition for redress of grievances. Dkt. No. 6 at 8. The court agrees. A permanent bar to any pleadings is not a sanction narrowly tailored to addressing the particular abuse in which the plaintiff has engaged. There are more narrowly tailored sanctions available.

One option is for the court to impose a monetary sanction, and to bar the plaintiff from filing any further pleadings or lawsuits related to the plaintiff's claims based on his status as the descendant of slaves and his status as a convicted felon until he pays the monetary sanction. This option would not constitute a permanent bar, but it also would not prevent the plaintiff from re-filing the same claims once he pays the sanction. And as he notes in his response to the United States Congress's motion, the plaintiff "pays the hundreds of dollars filing fee each time he files a grievance against the government." Id. In the span of three months this year, the plaintiff filed two civil cases, each carrying a $400 filing fee. The court would have to impose a substantial monetary penalty—well in excess of $800—to curb the plaintiff's abuse.

The court could enter an order barring the plaintiff from filing any pleadings or complaints raising claims based on his status as a descendent of slaves or his status as a convicted felon. The bar would relate only to claims that courts in this district have rejected as meritless on seven occasions. And the court could give the plaintiff the opportunity to seek relief from the bar after a specified time.

22

The plaintiff contends that "[e]ven Pharoah did not limit the number of times Moses could present his grievance; is the U.S.A. Congress less fair to descendants of American Slaves than Pharoah was to the Jews?" Id. Whatever ancient Egyptian laws may have said on the subject, modern American law prohibits a party from raising the same claims against the same parties over and over. The doctrine of *res judiciata* "bars an action if there was a final judgment on the merits in an earlier case and both the parties and claims in the two lawsuits are the same." Bernstein v. Bankert, 733 F.3d 190, 224 (7th Cir. 2013) (citations omitted). The doctrine of claim preclusion, "which operates to conserve judicial resources and promote finality, applies when a case involves the same parties and the same set of operative facts as an earlier one that was decided on the merits." Id. at 225 (citation omitted). Finally, the doctrine of issue preclusion, "a narrower doctrine than claim preclusion, prevents litigants from re-litigating an issue that has already been decided in a previous judgment." Id. (citation omitted).

Even if the claims the plaintiff has brought in this lawsuit had merit (and they don't), future attempts to bring the same claims likely would run afoul of one or more of these doctrines. If the plaintiff tried to bring a new lawsuit with identical claims that he'd raised in a prior suit against the same defendants he'd sued in a prior suit, he would be barred by *res judicata.* If he tried to bring a new lawsuit against parties he'd sued before, involving the same set of operative facts (his status as a descendant of slaves and a convicted felon), the suit would be barred by claim preclusion. If he tried to bring a new lawsuit

23

raising the identical issue to an issue he'd raised in a prior lawsuit, the suit would be barred by issue preclusion.

Given this, it seems to the court that a bar preventing the plaintiff from filing further lawsuits grounded in his status as the descendant of slaves or his status as a convicted felon, containing a provision allowing the plaintiff to ask the court to review or reconsider the bar after a certain period, would be a sanction narrowly tailored to address the specific abuse in which the plaintiff has engaged.

## VII. Conclusion

The court **DENIES AS MOOT** the United States Congress's motion to consolidate cases. Dkt. No. 5(I).

The court **GRANTS** the United States Congress's motion to dismiss. Dkt. No. 5(II).

The court **GRANTS IN PART** the United States Congress's motion requesting an order prohibiting the plaintiff from initiating further *pro se* suits. Dkt. No. 5(III).

The court **ORDERS** that the plaintiff is **BARRED** from filing any further pleadings or lawsuits in the Eastern District of Wisconsin bringing claims (in any form) arising out of his status as a descendant of slaves or his status as a convicted felon. This includes any claims that the federal government or its agencies, officials or representatives or the State of Wisconsin or its agencies, officials or representatives have passed laws or ratified constitutional provisions regulating the conduct of convicted felons in violation of the laws or

24

Constitution of the United States. The court **ORDERS** that the plaintiff is authorized to submit to this court, no earlier than **three years** from the date of this order, a motion to modify or rescind the order. The court **ORDERS** that if the plaintiff violates this bar, he may be subject to sanctions imposed by any judge in this district.

The court **ORDERS** that the claims against the United States Congress and the Wisconsin Legislature are **DISMISSED**, and that this case is **DISMISSED**. The court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 14th day of November, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

IN UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2019 JUL 15  A 10: 45

STEPHEN C. DRIES
CLERK

Barry J. Smith Sr.,

      Plaintiff,

   v.

The United States Congress and

The Wisconsin Legislature,

      Defendant.

**19-C-1001**

## CIVIL RIGHTS COMPLAINT

Jurisdictional Statement:   This court has original jurisdiction of this civil rights complaint

arising under the Constitution of the United States of America, and pursuant to 28 U.S.C.

Section 1331.

Cause of Action:   In 1990 plaintiff was convicted of "threatening the life" of federal Judge

John Reynolds in the United States District Court for the Eastern District of Wisconsin.

Plaintiff was sentenced pursuant to the United States Constitution's Thirteenth Amendment,

which states:  Section 1. Neither slavery nor involuntary servitude, except as a punishment for

crime whereof the party shall have been duly convicted, shall exist within the United States,

or any place subject to their jurisdiction. As a descendant of American slaves, plaintiff was

sentenced to a definite term of slavery. As a slave, the only rights plaintiff had were those the

1

government chose to grant him. Plaintiff was sentenced to twelve months in prison and forty-eight months of supervised release; this total sixty months of Thirteenth Amendment enslavement has long ago been served, discharged and expired. Plaintiff is, therefore, entitled to complete restoration of his citizenship. Nevertheless, defendants have chosen to deprive plaintiff of those citizenship rights it does not want him to have: among those rights are plaintiff's Thirteenth Amendment right to be free from slavery; plaintiff's Second Amendment right to keep and bear arms, and plaintiff's Fifteenth Amendment right to vote for the free person of his choice for elected office. By refusing to restore plaintiff's full and unabridged American citizenship rights, defendants are subjecting plaintiff, a direct descendant of American slaves, to the rule of law pronounced by the United States Supreme Court in the Dred Scott case. The case in which The United States Supreme Court held that descendants of Africans who were imported into this country, and sold as slaves, were not included nor intended to be included under the word "Citizens" in the Constitution, whether emancipated or not, and remained without rights or privileges except such as those which the government might grant them. Dred Scott v. Sanford, 60 U.S. (19 How.) 393, 15 L.Ed. 691. Quoting Black Law Dictionary, Sixth Edition, page 343.Defendants have enacted unconstitutional laws to conceal that they have denied plaintiff's citizenship rights except such as those which they choose to grant him. Defendants actions against plaintiff's citizenship rights under the Dred Scott case, as stated above, is clear and not subject to dispute.

Relief requested: Plaintiff demands his full and unabridged United States of America Citizenship rights be immediately restored.

2

Demand for jury trial: Plaintiff hereby demands trial by jury.

Date: July 15, 2019.

By:

Barry J. Smith Sr. pro se

3124 W. Silver Spring Drive

Milwaukee, WI 53209

414-315-3913

Certificate of Service:

Plaintiff, Barry J. Smith, hereby certifies that he has either personally served or served by
United States mail, postage prepaid, a true and correct copy of the above complaint addressed
to all parties required to be served:

1. Solicitor General of the United States, Room 5614

    Department of Justice, 950 Pennsylvania Ave., N.W., Washington D.C. 20530-0001

2. United States Attorney Matthew Krueger

    517 East Wisconsin Ave., Room 530

    Milwaukee, WI 53202

3. Wisconsin Attorney General Josh Kaul

    114 East State Capitol

    Madison, WI 53702

By:

Barry J. Smith Sr. pro se

3

Case 2:19-cv-01001-PP Filed 07/15/19 Page 3 of 3 Document 1
Case 2:19-cv-01001-PP Filed 07/08/22 Page 30 of 46 Document 27-1



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

20-C-1482

Barry Smith,

     And

Francillya Blake,

         Plaintiffs,

  V.

Community Care, Inc.,

     And

Guardiantrac LLC, dba GT Independence,

               Defendants.

---

## CIVIL COMPLAINT

---

     This complaint is based on the federal Fair Labor Standards Act.

    First cause of action:    Plaintiff, Barry Smith, has been employed by defendants, Community

Care Inc., and Guardiantrac LLC, dba GT Independence, for over three years as a non-licensed

skilled home health care provider.  During the past three years, September of 2017 through

September of 2020, a period of thirty six months, defendants have  willfully failed to pay, and

recklessly disregarded plaintiff's right to be paid the wages and overtime pay he has earned for a total of, exactly or about, twelve months. Defendants owe plaintiff, exactly or about, twelve months of unpaid wages and overtime pay.

Second cause of action: Plaintiff, Francillya Blake, has been employed by defendants, Community Care Inc., and Guardiantrac LLC, dba GT Independence, for over one year as a home health aide. During the past year, August of 2019 through September of 2020, a period of thirteen months, defendants have willfully failed to pay and recklessly disregarded plaintiff's right to be paid the wages and overtime pay she has earned for a total of, exactly or about, five months.

Plaintiffs demand trial by jury.

Relief requested: Plaintiffs seek the wages and overtime pay owed to them by defendants, and plaintiffs seek liquidated damages and attorney fees as provided by the Fair Labor Standards Act.

Dated: September 22, 2020.

By: _Barry Smith_        By: _Francillya Blake_

Barry Smith                 Francillya Blake

   3124 W. Silver Spring Dr.          1811 W. Galena Street

   Milwaukee, WI 53209            Milwaukee, WI 53205

   414-315-3913                  414-301-0502

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BARRY JOE SMITH and
FRANCILLYA BLAKE,

                    Plaintiffs,                         Case No. 20-CV-1482-JPS

v.

COMMUNITY CARE, INC. and                               **ORDER**
GUARDIANTRAC, LLC, *doing*
*business as* GT INDEPENDENCE,

                    Defendants.

---

On November 14, 2019, Chief District Judge Pamela Pepper ordered that Plaintiff Barry Joe Smith ("Smith") be "barred from filing any further pleadings or lawsuits in the Eastern District of Wisconsin bringing claims (in any form) arising out of his status as a descendant of slaves or his status as a convicted felon." *Smith v. United States Cong.*, No. 19-CV-1001-PP, 2019 WL 6037487, at *11 (E.D. Wis. Nov. 14, 2019). That order notified Smith that he would not be allowed to request that a court modify or rescind that order for three years. *Id.* Judge Pepper further ordered that if Smith violates his restricted-filer status, "he may be subject to sanctions imposed by any judge in this district." *Id.*

In the present case before this Court, Smith alleges that his claims arise out of his status as a descendant of slaves. Accordingly, this action as to Smith will be dismissed without prejudice. Further, because the claim of Smith's co-plaintiff, Francillya Blake ("Blake"), is inextricably intertwined with Smith's prohibited claims, this action will be dismissed without

prejudice as to her as well. Finally, the parties' agreed motion as to the deadline to file a responsive pleading, (Docket #11), will be denied as moot.

## 1.   PLAINTIFFS' ALLEGATIONS

On September 22, 2020, Plaintiffs filed their *pro se* complaint in this matter, followed by an amended complaint on October 27, 2020, alleging violations of the Fair Labor Standards Act ("FLSA"), 42 U.S.C. § 1981, by Defendants, Community Care, Inc. ("CCI") and Guardiantrac LLC, doing business as GT Independence ("GT Independence"). (Docket #1, #8). Plaintiffs allege that Smith's brother, Donnelly Smith ("Donnelly"), is quadriplegic with a host of other serious medical conditions necessitating long-term care, and that Donnelly has a contract with CCI to provide him with medical care and supplies. (Docket #8 at 1–2). Plaintiffs allege that CCI has breached this contract, forcing Smith to take on the role of caretaker for his brother and to incur the cost of medical supplies which CCI should have been providing. (*Id.* at 2). Further, because of CCI's alleged breach, Smith claims that he was forced to "loan Donnelly's other caretaker [Blake] . . . over ten thousand dollars in pay she has earned from CCI." (*Id.*) Plaintiffs accordingly wish to be viewed as employees of Defendants and due their respective wages; thus, they bring their suit under FLSA. (*Id.* at 3–4).[1]

## 2.   ANALYSIS

Because of his repeated abusive filings in this district, in 2019, Smith was sanctioned by Judge Pepper with a restricted-filer status, prohibiting him from "filing any further pleadings or lawsuits in the Eastern District of

---

[1]It is unclear exactly how GT Independence fits into this case. Plaintiffs state that CCI provides "six month payment authorization to GT Independence," suggesting that CCI contracts with GT Independence. (Docket #8 at 3). Thus, Plaintiffs seem to be asserting that they should also be considered employees of GT Independence. (*Id.* at 3–4).

Page 2 of 4
Case 2:20-cv-01482-JPS   Filed 11/17/20   Page 2 of 4   Document 18
Case 2:19-cv-01001-PP   Filed 07/08/22   Page 34 of 46   Document 27-1

Wisconsin bringing claims (in any form) arising out of his status as a descendant of slaves or his status as a convicted felon." *Smith*, 2019 WL 6037487, at *11. In the present case, Plaintiffs claim that "[b]ut [f]or Smith and Donnelly both being Black descendants of American slaves, CCI would not be refusing and failing to allow Donnelly and Smith to enforce their contract(s) with CCI." (*Id.* at 3). This type of allegation is directly prohibited by Judge Pepper's order. Smith is barred from filing this case, and it must be dismissed as to him. As to Smith's co-plaintiff, Blake, her claim stems directly out of Smith's improper claim—that because Defendants breached Smith's contract due to his status as a descendant of slaves, Smith was forced to bring in Blake as an "employee" of Defendants, and Defendants similarly failed to pay her wages. Thus, Blake's claim must also be dismissed.

### 3.    CONCLUSION

This action will be dismissed without prejudice as to both Plaintiffs. Additionally, the Court wishes to remind Smith that Judge Pepper's order designating him as a restricted filer remains in place until at least November 2022. That order provides that Smith may be sanctioned by any judge in this district if he violates it. This Court urges Smith to proceed with caution if he again chooses to seek relief for this claim and to avoid bringing any claims arising out of his status as a descendant of slaves or his status as a convicted felon.

Accordingly,

**IT IS ORDERED** that this action be and the same is hereby **DISMISSED without prejudice** as to both Plaintiffs; and

Page 3 of 4
Case 2:20-cv-01482-JPS    Filed 11/17/20    Page 3 of 4    Document 18
Case 2:19-cv-01001-PP    Filed 07/08/22    Page 35 of 46    Document 27-1

**IT IS FURTHER ORDERED** that the parties' agreed motion confirming the deadline for GT Independence to file a responsive pleading (Docket #11) be and the same is hereby **DENIED as moot**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of November, 2020.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Page 4 of 4
Case 2:20-cv-01482-JPS   Filed 11/17/20   Page 4 of 4   Document 18
Case 2:19-cv-01001-PP   Filed 07/08/22   Page 36 of 46   Document 27-1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

Barry Joe Smith and

Francillya Blake,

        Plaintiffs,

    v.

Community Care, Inc. and

Guardiantrac, LLC, *doing business*

*as* GT Independence,

        Defendants.

Case No. 20-CV-1482-JPS

---

RULES 59(e) MOTION WITH MOTION FOR LEAVE TO AMEND COMPLAINT

---

1.     Plaintiffs hereby move the court pursuant to Fed. R. Civ. P. 59(e) to alter or amend its judgement on the following grounds:

(a)     Title 42 U.S.C. Section 1981(a)(b)(c) protects non-white citizens against impairment of their rights by nongovernmental discrimination and/or impairment under color of State law. Plaintiff, Barry Joe Smith, hereinafter Smith, by stating in the first amended complaint, first cause of action, that but for the fact that they are Black descendants of American slaves, CCI would honor its contract with them, somehow violated the order of Judge Pepper in "*Smith v. United States Cong.,* No. 19-CV-1001-PP, 2019 WL 6037487, at \*11 (E.D. Wis. Nov. 14, 2019). Title 42 U.S.C. Section 1981(a)(b)(c) requires that Smith identify as non-white, for this reason he identified himself as a Black descendant of American slaves. Smith did not intend to violate

the court's order that he not self-identify as a descendant of American slaves, the words "convicted felon" do not appear anywhere in Case # 20-C-1482; Smith believes he has the right to self-identify granted to him by the Ninth and Tenth Amendments to the United States Constitution. Nevertheless, Smith respects the power of this court. In compliance with the order of this court, with leave of this court, Smith's attached proposed amended complaint, first cause of action, has removed Smith's self identification as a " descendent of American slaves" and replaced it with the word that his birth certificate uses to identify him: "Negro". Smith has attached a copy of his official birth certificate to document the fact that he is an American Negro. For this reason, Smith moves the court to reopen this case, and to allow the attached amended complaint to be filed pursuant to Fed. R. Civ. P. 15(a)(2).

Dated: November 22, 2020

By: _____

Barry J. Smith   pro se

3124 W. Silver Spring Dr.

Milwaukee, WI 53209

Progod1@msn.com

414-315-3913

Certificate of service:

Atty. Robert Sanders, Atty. Anthony Anzelmo

555 East Wells Street, Suite 1900

Milwaukee, WI 53202-3819

Robert.sanders@huschblackwell.com

Anthony.anzelmo@huschblackwell.com

414-273-2100

By: _____

Francillya Blake   pro se

836 N. 24th Street

Milwaukee, WI 53233

franbcool@gmail.com

414-301-0502

Atty. Emma Jewel, Atty. Erin M. Cook

833 East Michigan Street

Milwaukee, WI 53202-5615

ejewell@gklaw.com

mcook@gklaw.com

414-273-350

**STATE OF ILLINOIS)**
**County of Cook)**

**DAVID ORR, County Clerk**

December 8, 2016

I, David Orr, County Clerk of the County of Cook, in the State aforesaid, and Keeper of the Records and files of said County do herby certify that the attached is the true and correct copy of the original Record on file, all of which appears from the records and files in my office. IN WITNESS THEREOF, I have hereunto set my hand and affixed the Seal of the County of Cook, at my office in the City of Chicago, in said County.

# CERTIFICATE OF BIRTH
## STATE OF ILLINOIS

Reg. Dist. No.
Registered No. 35,559

**CHILD'S BIRTH NUMBER**
112-53-617678

| | | |
|---|---|---|
| **PLACE OF BIRTH** 1a. COUNTY | Cook | **USUAL RESIDENCE OF MOTHER (Where does mother live?)** 2a. STATE Illinois / 2b. COUNTY Cook |
| 1b. CITY (If outside corporate limits, write RURAL and give township) OR TOWN Chicago | | 2c. CITY (If outside corporate limits, write RURAL and give township) OR TOWN Chicago |
| 1c. STREET (If rural, give location. If in hospital or institution, give name) No. 51 Cook County Hospital | | 2d. STREET ADDRESS (If rural, give location) 533 East 38th St |
| 3. CHILD'S NAME a. (First) BARRY | b. (Middle) JOE | c. (Last) SMITH |

| 4. SEX Male | 5a. THIS BIRTH SINGLE ☑ TWIN ☐ TRIPLET ☐ | 5b. IF TWIN OR TRIPLET (This child born) 1st ☐ 2nd ☐ 3rd ☐ | 6. DATE OF BIRTH (Month) MARCH (Day) 10 (Year) 1953 |

**FATHER**

| 7. FULL NAME OF FATHER a. (First) Mack | b. (Middle) | c. (Last) Smith | 8. COLOR OR RACE Negro |
|---|---|---|---|
| 9. HIS AGE (At time of this birth) 37 YEARS | 10. HIS BIRTHPLACE (State or foreign country) Alabama | 11a. HIS USUAL OCCUPATION Clerk | 11b. BUSINESS OR INDUSTRY Post Office |

**MOTHER**

| 12. FULL MAIDEN NAME a. (First) Mattie | b. (Middle) | c. (Last) Crum | 13. COLOR OR RACE Negro |
|---|---|---|---|
| 14. HER AGE (At time of this birth) 31 YEARS | 15. HER BIRTHPLACE (State or foreign country) Alabama | 16. CHILDREN PREVIOUSLY BORN TO THIS MOTHER (Do NOT include this child) | |

16. a. OTHER children now living 5 / b. OTHER children now dead 0 / c. Children still born (born alive but now dead after 20 weeks pregnancy) 0

17. I hereby certify that I attended at the birth of this child which was BORN ALIVE at 12:40 P. M. on the date stated above.

Signed: Harold Jones

Address: Cook County Hospital

MIDWIFE M. D. ☑
OTHER Attendant: (Specify)

Date signed: 3-11, 1953

Phones: Sa. 8-2500

Mother's mailing address for registration and/or
533 East 38th Street

RECEIVED FOR FILING ON: MAR 12 1953 19
Signed:

INFORMANT: Mattie Smith

LOCAL REGISTRAR: Vernon N. Brundage
Address: CHICAGO ILLINOIS

SUB REGISTRAR
DEPUTY REGISTRAR

4462650


**County of Cook**
**State of Illinois**

**Office of County Clerk**
**David Orr**

David Orr
DAVID ORR COUNTY CLERK

This copy is not valid unless displaying embossed seals of Cook County and the County signatures.

VOID WITHOUT WATERMARK OR SEAL OR EMBOSSED

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

Barry Joe Smith,

And

Francillya Blake,

        Plaintiffs,

V                                                        Case # 20-C-1482

Community Care, Inc.,

And

Guardiantrac LLC, dba GT Independence,

                Defendants.

## AMENDED CIVIL COMPLAINT

        Pursuant to Federal Rule of Civil Procedure 15(a)(2), plaintiff, Barry Joe Smith, and
Francillya Blake hereby amend their complaint as follows:

        The court's jurisdiction of this complaint is based on 42 U.S.C. section 1981 and the
federal Fair Labor Standards Act.

First Cause of Action: Defendant, Community Care Inc., hereinafter CCI, has refused and failed
to honor its medical services and employment contracts with plaintiffs Donnelly Smith and Barry
Smith; But for the fact that they are American Negroes, CCI would honor its
contract with them. Plaintiff, Barry J. Smith, hereinafter Smith, is the Wisconsin circuit court

1

appointed guardian of his brother, Donnelly Smith, hereinafter Donnelly. Donnelly is a quadriplegic who has diabetes, high blood pressure, and breathing and swallowing difficulties. For the past four years, Donnelly has been enrolled as a client of CCI. During this four years, CCI has managed Donnelly's Family Care/Medicaid long-term care through its authorized agents, a White "care team". CCI has refused and failed to honor its contract with Donnelly to provide to him all of the medical supplies necessary for his survival and to pay the contracted wages to his caretakers; CCI has not provided Donnelly a hospital adjustable 3 position long term care bed which forced Smith to provide that hospital bed; CCI has not provided the yankauer device, to suction excess saliva from Donnelly's mouth to prevent potentially fatal choking, to be used with the suction machine, forcing Smith to supply them; CCI's contract with Donnelly requires it to provide a necessary wheel chair ramp for Donnelly at his current residence for his entry and exit, CCI refused and failed to provide the ramp and this forced Smith to provide the necessary ramp; CCI has not provided vital gastrostomy replacement tubes, and has forced Smith to supply those tubes; CCI many times has failed to supply catheter drain bags and other necessary medical supplies, CCI has many times forced Smith to provide these necessary supplies. About two months out of each six month budget, CCI stops paying Donnelly's caregivers; it has always been difficult to find competent workers to help care for Donnelly because of his need for a nursing home level of care; when the budget ends it is impossible to get help with Donnelly; CCI by refusing and failing to pay Donnelly's caregivers according to its contract with Donnelly, has forced Smith to be Donnelly's sole caregiver during CCI's breach of caretaker payment contract, or forcing Smith to loan Donnelly's other caretaker their pay in whole or in part; this has forced Smith to loan Francillya Blake over ten thousand dollars in pay she has earned from CCI; Smith has to have help caring for Donnelly because, as CCI knows, Smith is in his late sixties and sleeping less than four hours, out of each twenty four hour day, for multiple consecutive weeks, can be fatal to Smith's health. CCI, by refusing to

2

allow Donnelly to enforce his contract with it, and by refusing to allow Smith to enforce his employment contract with it, CCI, by its agents, the White CCI care team that has managed Donnelly's and Smith's contract with CCI, has endangered the lives of both Donnelly and Smith. Finally, CCI has refused and failed to honor the prescription by Doctor Jeffrey A. Katt, MD, ordering that Donnelly requires twenty four hour care seven days every week within his home; CCI provides payment for only seventeen and one-half hours of each day during its six month payment authorization to GT Independence. The CCI care team is White. Donnelly and Smith, American Negroes, requested a new care team that included at least one American Negro. CCI replaced the White care team with another White care team. But For Smith and Donnelly both being American Negroes, CCI would not be refusing and failing to allow Donnelly and Smith to enforce their contract(s) with CCI.

Second cause of Action: Plaintiff, Barry Smith, has been employed by defendants, Community Care Inc., and Guardiantrac LLC, dba GT Independence, for over three years as a skilled home health care provider; providing a nursing home level of care to their client, Donnelly Smith. During the past three years, September of 2017 through September of 2020, a period of thirty six months, defendants have willfully refused and failed to pay, and recklessly disregarded plaintiff's right to be paid, the wages and overtime pay he has earned for a total of, exactly or about, twelve months. Defendants owe plaintiff, exactly or about, twelve months of unpaid wages and overtime pay.

Third cause of Action: Plaintiff, Francillya Blake, has been employed by defendants, Community Care Inc., and Guardiantrac LLC, dba GT Independence, for over one year as a home health aide. During the past year, August of 2019 through September of 2020, a period of thirteen months, defendants have willfully failed to pay and recklessly disregarded plaintiff's

3

right to be paid the unpaid wages and overtime pay she has earned for a total of, exactly or about, fourteen thousand and thirty three dollars ($14,033.00).

Plaintiffs demand trial by jury.

Relief requested for First cause of action is twenty-two million dollars ($22,000,000.00). Relief requested for Second and Third causes of action are the wages and overtime pay owed to each plaintiff by defendants, together with liquidated damages and attorney fees as provided by the Fair Labor Standards Act.

Date: November 22, 2020.

By: _____

Barry J. Smith  pro se

3124 W. Silver Spring Dr.

Milwaukee, WI  53209

414 315-3913

progod1@msn.com

By: _____

Francillya Blake   pro se

836 N. 24th Street

Milwaukee, WI  53233

414  301-0502

franbcool@gmail.com

4

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BARRY JOE SMITH and
FRANCILLYA BLAKE,

                 Plaintiffs,

v.

COMMUNITY CARE, INC. and
GUARDIANTRAC, LLC, *doing
business as* GT INDEPENDENCE,

                 Defendants.

Case No. 20-CV-1482-JPS

## ORDER

       On November 17, 2020, the Court dismissed this action without prejudice because Smith violated his restricted-filer status. (Docket #18). Smith is "barred from filing any further pleadings or lawsuits in the Eastern District of Wisconsin bringing claims (in any form) arising out of his status as a descendant of slaves or his status as a convicted felon." (*Id.*) In their *pro se* complaint, Plaintiffs allege that Defendants breached their contract with Smith due to him being a "Black descendant[] of American slaves." (Docket #8). Plaintiffs now ask that the Court amend its judgment, reopen the case, and allow Plaintiffs to file an amended complaint. (Docket #20). In the proposed amended complaint, Plaintiffs replace the phrase "Black descendants of American slaves" with "American Negro." (Docket #20-1). Plaintiffs may not circumvent Smith's restricted-filer status by replacing the violating phrase but maintaining its spirit. Thus, for the reasons stated in its order dismissing this action (Docket #18), the Court will deny Plaintiffs' motion.

       Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for leave to amend their complaint (Docket #20) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2020.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Page 2 of 2
Case 2:20-cv-01482-JPS   Filed 12/01/20   Page 2 of 2   Document 21
Case 2:19-cv-01001-PP   Filed 07/08/22   Page 45 of 46   Document 27-1

Representatives shall not choose a President whenever the right of choice shall devolve upon them before the fourth day of March next following, then the Vice-President shall act as President, as in the case of the death or other constitutional disability of the President.—The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of Electors appointed, and if no person have a majority, then from the two highest numbers on the list, the Senate shall choose the Vice-President; a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice. But no person constitutionally ineligible to the office of President shall be eligible to that of Vice–President of the United States.

## Amendment XIII [1865]

Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

Section 2. Congress shall have power to enforce this article by appropriate legislation.

## Amendment XIV [1868]

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

Section 4. The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.