UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARRY J. SMITH, SR.,

    Plaintiff,

v.

    Case No. 19-cv-1001-pp

UNITED STATES CONGRESS
and WISCONSIN LEGISLATURE,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S "MOTION TO COMPLY WITH JUDGE PEPPER'S PERPETUAL RESTRICTED FILER ORDER REQUIRING PLAINTIFF TO FORMALLY REQUEST THAT ORDER BE EXPIRED ON NOVEMBER 15TH, 2022" (DKT. NO. 34)**

"For more than a decade, Barry Smith has sued the federal, state and local governments challenging laws that restricted him from possessing firearms and holding an elected office." Smith v. United States Congress, Appeal No. 22-2592, 2023 WL 3581990, *1 (7th Cir. May 22, 2023). Judges in this district and judges on the Seventh Circuit Court of Appeals have told the plaintiff that his arguments lack merit. On November 14, 2019, this court issued a filing bar:

> The court **ORDERS** that the plaintiff is **BARRED** from filing any further pleadings or lawsuits in the Eastern District of Wisconsin bringing claims (in any form) arising out of his status as a descendant of slaves or his status as a convicted felon. This includes any claims that the federal government or its agencies, officials or representatives or the State of Wisconsin or its agencies, officials or representatives have passed laws or ratified constitutional provisions regulating the conduct of convicted felons in violation of the laws or Constitution of the United States. The court **ORDERS** that the plaintiff is authorized to submit to this court, no earlier than three years from the date of this order, a motion to modify or rescind the order. The court **ORDERS** that if the plaintiff violates this bar, he may be subject to sanctions imposed by any judge in this district.

1

Dkt. No. 8 at 24-25. The Seventh Circuit affirmed without disturbing the filing bar and fined the plaintiff $2,000. Smith v. United States Congress, 840 F. App'x 31, 34 (7th Cir. 2021), cert. denied 142 S. Ct. 398 (2021).

The Seventh Circuit later affirmed this court's order denying the plaintiff's Federal Rule of Civil Procedure 60(b)(4) and (6) motion to reconsider; the court denied that motion because it was untimely and failed to state any cognizable grounds for relief. Dkt. No. 33. In its order affirming this court's ruling, the Seventh Circuit increased the fine to $5,000 based on the plaintiff's history of abusive litigation practices. Id. at 3. The Seventh Circuit explained:

> Over the years, Smith has filed seven closely related federal actions and appeals that were rejected by district courts and this court as "meritless, frivolous, or even absurd." *See Smith*, 840 F. App'x at 32 (collecting cases). After he appealed from the district court's dismissal of his complaint in this case, we fined Smith $2,000 for his abuse of the judicial process. *Id.* at 34. But Smith has paid that fine and continues filing meritless actions and appeals. This includes an attempt to sue a private company based on claims arising out of his status as a descendant of slaves. *See Compl. Smith v. Cmty. Care, Inc.*, No. 20-cv-1482 (E.D. Wis. Sept. 22, 2020). When the court dismissed his suit for violating the filing bar, Smith sought to amend his complaint to replace "Black descendants of American slaves" with "American Negro." The court rejected the attempt to circumvent the filing bar "by replacing the violating phrase but maintaining its spirit." Order denying leave to amend, *Smith*, No. 20-cv-1482 (E.D. Wis. Dec. 1, 2020). We affirmed. *Smith*, 2022 WL 1436799, at *1.
>
> The $2,000 sanction was clearly insufficient to deter Smith's improper conduct, and so now we fine him $5,000 for his continued vexatious litigation. *See Reed v. PF of Milwaukee Midtown, LLC*, 16 F.4th 1229, 1232 (7th Cir. 2021) (new filing bar justified with continued frivolous suits). Within fourteen days of this order, Smith must tender a check payable to the clerk of this court for the full amount of the sanction. Further, the clerks of all federal courts in this circuit shall return unfiled any papers submitted either directly or indirectly by or on behalf of Smith unless and until he pays the full sanction that has been imposed against him. *See In re City of Chicago*, 500 F.3d 582, 585–86 (7th Cir. 2007); *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995). This filing bar

2

excludes criminal cases and applications for writs of habeas corpus. *See Mack*, 45 F.3d at 186–87.

If Smith, despite his best efforts, is unable to pay in full all outstanding sanctions, he is authorized to submit to this court a motion to modify or rescind this order no earlier than two years from the date of this order. *See id.* at 186; *City of Chicago*, 500 F.3d at 585–86. We note that this sanction has no effect on the filing bar imposed by the district court.

Id. at 2-3.

## I. Plaintiff's Motion to Comply with Judge Pepper's Perpetual Restricted Filer Order (Dkt. No. 34)

On March 25, 2024, the court received from the plaintiff a motion stating that the plaintiff was before the court "to comply with the clear meaning of this court's order that unless and until plaintiff formally moves this court to 'modify or rescind' it, the court's order is perpetual." Dkt. No. 34 at 1. On the last page of the motion, under "Relief requested," the plaintiff stated that "[u]nless the court's order making the plaintiff a restricted filer is perpetual, where the court will forever deny plaintiff's motion for relief from its restricted filer order, the court should retroactively rescind its order to November 15, 2022." Dkt. No. 34 at 5. In the alternative, the plaintiff asked the court to "clarify whether plaintiff identifying himself in a complaint as Black violates its restricted filer order." Id.

The plaintiff began by stating that he never had claimed that his complaints arose "out of his status as a descendant of slaves or his status as a convicted felon," but claimed that they "arose under the Fifth, Thirteenth and Fourteenth Amendments to the United States Constitution." Id. at 1. He then speculated that this court's filing bar was "motivated" by a decision from the late Judge Robert Warren in which Judge Warren allegedly reversed the late Judge John Reynold's "illegal dismissal order in Case No. 88-C-897, filed on May 7th, 1992." Id. The plaintiff said that he "sought to have him"—it is not

3

clear whether he meant Judge Warren or Judge Reynolds—"investigated by the F.B.I., they refused and attacked the plaintiff instead." Id. He alleged that since "that case plaintiff has not succeeded in having any case filed by him in the Eastern District of Wisconsin progress to the status of Title V Federal Rules of Discovery."[1] Id.

The plaintiff concluded from this fact that the federal judiciary is conspiring against him in violation of 42 U.S.C. §1985(2).[2] Id. at 1-2. He perceived court orders as actions that intimidate by threat of imprisonment or monetary punishment, and while he said that he did not know whether that statute applies to federal judges, he opined that federal judges are in the "best position to covertly violate this statute." Id. at 2. According to the plaintiff, the complaints that this court dismissed were "his attempt to enforce his Thirteenth Amendment right to be free from Thirteenth Amendment slavery and his Fourteenth Amendment right to equal protection of America's laws." Id.

The plaintiff argued that two of the cases the court dismissed were "frivolous dismissals":

> A citizen convicted of a crime and sentenced within the maximum punishment attached to the subject crime is a Thirteenth Amendment slave during service of his judicial sentence to Thirteenth Amendment enslavement, the government lawfully takes away his Second amendment right to keep and bear arms; the

---

[1] The court is not aware of the "Federal Rules of Discovery." Discovery in federal courts is governed by the Federal Rules of Civil Procedure; Title V of those rules contains the rules governing discovery (F.R.C.P. 26 through 37).

[2] 42 U.S.C. §1985 prohibits two or more persons from conspiring to prevent, "by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof." 42 U.S.C. §1985(1). It also prohibits two or more persons from conspiring to deter—by force, intimidation, or threat—any party or witness in a U.S. court from attending court or testifying. 42 U.S.C. §1985(2). Finally, it prohibits two or more persons from conspiring to deprive another person of his or her civil rights. 42 U.S.C. §1985(3).

4

> government lawfully takes away his Fifteenth Amendment right to run for or hold public office. When that judicial sentence has been discharged and paid in full, that citizen is not a Thirteenth Amendment slave, and pursuant to the Uited States Constitution is restored to Fourteenth Amendment Citizenship. The entire federal and state judiciaries shall face these bold facts and law; they must cease their frivolous claim that an ex-convict or ex-"felon" is still a Thirteenth amendment slave. This court's subject order has not and could not cite to any Supreme Court, Appeals Court or District Court Case Law that clearly contradicts these bold facts and law.

Id. at 2-3. He stated that the defendants in Case No. 19-C-067 (the plaintiff likely means Case No. 19-cv-671, a lawsuit he filed in May 2019 and which the court dismissed on November 14, 2019 for failure to state a claim) were the United States Congress and the Wisconsin legislature, and that the "clear" issue he raised was that federal and state laws disqualifying persons convicted of felonies from possessing firearms and holding elected office are bills of attainder that violate the Fifteenth Amendment. Id. at 3. He said that those claims were different than his claims in this case, asserting that one of the cases "invokes Article I, Section 9, Clause 3 of the United States Constitution,[3] and the other invokes the Thirteenth Amendment which prohibits the government depriving the plaintiff of Constitutional rights, which the government does as if it is legalized by the United States Supreme Court ruling in the Dred Scott v. Sandford, 60 U.S. (19 How. 393), 15 L. Ed. 691." Id. at 4.

The plaintiff said:

> This reasoning can be legitimately applied during the time plaintiff was serving a Thirteenth Amendment sentence to government slavery; the United States Constitution commands, pursuant to the Thirteenth Amendment, that the principles of enslavement ruled in that dreaded case can only be applied during the service of a Thirteenth Amendment judicially pronounced criminal sentence: Descendants of Africans who were imported into this country, and

---

[3] Article I, Section 9, Clause 3 reads, "No Bill of Attainder or ex post factor Law shall be passed."

5

sold as slaves, were not included nor intended to be included under the word "Citizens" in the Constitution, whether emancipated or not, and remained without rights or privileges except such as those which the government might grant them. Dread Scott v. Sanford. Plaintiff is not serving a criminal sentence judicially pronounced by an authorized judge. Plaintiff is, therefore, a Fourteenth Amendment citizen entitled to all of the rights and privileges enumerated in the United States Constitution.

Id.

The plaintiff asserted that the court has "barred plaintiff filing any complaint in federal court that arises out of the U.S. Constitution and federal statues that require he identify as a member of a ethnic group or race other than white, such as descendant of American slaves or American Negro," and he argued that this prevents him from "claiming the protection of any of American's Laws that shield him from illegal ethnic or racial group discrimination against him." Id. As an example, the plaintiff said that one of the consequences of the court's filing bar is that Community Care, Inc.—the defendant in three lawsuits filed by the plaintiff since the court imposed the filing bar—has retaliated against him. Id. at 4. The plaintiff quoted a letter written by Community Care stating, "You may only bill for services included in your brother's care plan;" the plaintiff reads this as Community Care "over ruling Donnelly's [Donnelly is the plaintiff's brother] Doctor and plaintiff's contract that requires he be paid per hour worked." Id. at 4-5 (bolding omitted).

## II.  Defendant's Response (Dkt. No. 36)

The government opposes the plaintiff's motion, arguing that the plaintiff has continued to bring frivolous lawsuits despite the fines levied by the Seventh Circuit. Dkt. No. 36 at 1. It recounts that since the court imposed the filing bar, the plaintiff has filed three cases against defendants Community Care and Guardiantrac LLC "based on his status as a descendent of a slave

6

and his race." Id. at 4. The defendant explains that Judge Stadtmueller dismissed the first lawsuit, citing this court's 2019 filing bar; the defendant emphasizes that Judge Stadtmueller reminded the plaintiff that he could be sanctioned for violating the filing bar and that the judge "urge[ed] [the plaintiff] to proceed with caution." Id. at 4-5 (citing Smith v. Community. Care, Inc., Case No. 20-cv-1482, Dkt. No. 18 at 3 (E.D. Wis. Nov. 17, 2020)). The defendant explains that Judge Adelman "summarily dismissed" the second suit, citing the Seventh Circuit's filing bar and concluding that the complaint "should have never been accepted in the first place." Id. at 5 (citing Smith v. Community Care Inc., Case No. 24-cv-121, Dkt. No. 12 at 1 (E.D. Wis. Mar. 6, 2024)). It explains that Judge Ludwig dismissed the third case, finding that in filing it, the plaintiff had violated this court's filing bar "by raising claims based on his race." Id. (citing Smith v. Community Care Inc., No. 24-cv-386, Dkt. No. 3 at 3 (E.D. Wis. Mar. 29, 2024)). The defendant recounts that Judge Ludwig commented that this was the third time that the plaintiff had filed a substantively similar suit against the defendants and the third time that the suit had been dismissed for violating the filing bar. Id. The defendant advises the court that Judge Ludwig suggested that further sanctions may be required but that because the plaintiff had filed the instant motion in this case, Judge Ludwig would not impose sanctions but would advise this court and allow this court to decide whether further sanctions are necessary. Id.

The defendant asserts that the plaintiff has "not accepted the repeated repudiations of his legal theories." Id. at 6. It says that the plaintiff "continues to claim that his rights are being violated because of his status as a convicted felon and a descendent of slaves." Id. The government maintains that these are the same arguments that have been rejected "numerous times" by the district

7

court, the Seventh Circuit and the Supreme Court. Id. The government asks the court to deny the plaintiff's request to rescind the 2019 filing bar and to order that he not file a renewed request to modify or rescind the order until an additional three years have passed. Id. at 7.

As for the plaintiff's request for clarification, the defendant opines that this court's order was sufficiently clear, and that the plaintiff has received additional guidance from other district court judges and from the Seventh Circuit. Id. at 7. It recounts that the Seventh Circuit told the plaintiff that "the filing bar therefore blocks any suit like this one, that includes a claim arising out of [the plaintiff's] race, regardless of how he labels it." Id. (citing Smith v. Community Care, Appeal No. 20-3363, 2022 WL 1436799, *1 (7th Cir. 2022)). It points out that Judge Ludwig also stated that this court's filing bar bars any suit in this district that includes a claim arising out of the plaintiff's race. Id. Opining that the plaintiff seems undeterred by financial penalties (all of which he has paid), the government "recommends that the Court direct the clerk of court to decline to accept any filing from [the plaintiff] unless he receives express prior authorization by a judge of the Eastern District of Wisconsin." Id. at 8 (citing In re Chapman, 328 F.3d 903, 905 (7th Cir. 2003) ("upholding district court order requiring all materials tendered by a litigant to be screened and approved before filed in court")). The government suggests that the court could order that after three years, the plaintiff could file a motion asking to remove this screening requirement. Id.

### III. Plaintiff's Reply (Dkt. No. 37)

In his five-page reply, the plaintiff focuses on a 1991 Judge Warren decision in which the judge stated that the plaintiff had threatened to kill Judge John Reynolds with a 16th century Jewish sword. Dkt. No. 37 at 1

8

(citing United States v. Smith, Appeal No. 90-2368, 1991 WL 36269, at *1 (7th Cir. 1991)). The plaintiff insists that he did not tell the FBI that he was planning to kill Judge Reynolds; he says that in response to the FBI's statement that they do not investigate judges, he asked, "What do I have to do to get justice, cut off his head with a 16th century Jewish sword?" Id. The plaintiff argues that this was no more a threat than asking, "What do I have to do to get justice, have the earth open up and swallow the whole United States of America into its bowels before closing itself over us?" Id. at 1-2. The plaintiff argues that neither question is a threat and that both constitute speech protected by the First Amendment. Id. at 2.

The plaintiff explains that the allegation that he threatened to kill Judge Reynolds went to trial before Judge Stadtmueller. Id. at 2. He says that he moved for suppression of evidence sized from his home without a search warrant, and that during the trial, the prosecutors showed the jury the plaintiff's sword that, he alleges, had been unlawfully seized. Id. He says that both Judge Stadtmueller and the prosecutors knew that the sword had been unlawfully seized; he says that he appealed its presentation in evidence to the Seventh Circuit, which concluded that the sword should have been excluded but that the failure to do so constituted harmless error. Id.

The plaintiff argues that he also had filed a motion to subpoena Judge Reynolds to testify that the plaintiff had "telephoned him several times at his courtroom;" the plaintiff says he wanted to introduce this evidence to show that if he had wanted to threaten Judge Reynolds, he could have just called the judge directly. Id. at 3. He says, however, that Judge Stadtmueller denied his motion to subpoena Judge Reynolds, thus denying the plaintiff his Sixth Amendment right to a fair trial. Id. at 4. The plaintiff believes that he was

9

deprived of a fair trial by Judge Stadtmueller and that the Seventh Circuit should have reversed his conviction. Id. In any event, the plaintiff argues that he has completed his sentence and that the federal government should not be allowed to punish him a second time for his past conviction. Id.

The plaintiff maintains that his decades of litigation have been an attempt to establish that Congress is prohibited from passing a bill of attainder or *ex post facto* law. Id. at 4. He reasserts that 18 U.S.C. §922(d)(1)(g)(1) (the statute that prohibits a person convicted of a felony from possessing firearms) is "an unconstitutional law that has resulted in disproportionate incarceration and making of lifetime Thirteenth Amendment citizens of non-immigrant Black Americans." Id. at 5. The plaintiff asks whether it is "frivolous, meritless, and absurd for [him] to continue to fight against Congress making of him a Thirteenth Amendment slave for the rest of his life?" Id. He asks the court to grant him "the fundamental fairness of access to your courts, and he will assist in making America great again." Id.

## IV. Analysis

The court explained in its order dismissing Case No. 19-cv-671 that for over ten years, the plaintiff had been filing cases alleging that his civil rights had been violated by the fact that his felony conviction prevented him from running for office and prevented him from possessing a firearm, and that his status as a descendant of enslaved people had resulted in his being denied participation in federal programs. Case No. 19-cv-671 at Dkt. No. 15, pages 1-5. The court denied the plaintiff's claim under Article I, Section 9, Clause 3 of the Constitution based on the fact that the U.S. Congress had not waived immunity and on the Seventh Circuit's caselaw. Id. at 6-8. It denied his similar claims against the Wisconsin legislature for the same reasons. Id. at 8-9. It

denied the plaintiff's claim that the Wisconsin constitution's prohibition against persons convicted of felonies holding elected office was an unconstitutional bill of attainder. Id. at 9. It denied his claims that his Second Amendment rights had been violated by the prohibition against persons convicted of felonies from possessing firearms. Id. at 9-10. It denied his Fifteenth Amendment claims that these laws constituted bills of attainder and his Thirteenth Amendment claims that restrictions resulting from felony convictions violate the Thirteenth Amendment. Id. at 10. The court based all these rulings on long-standing precedent set by the U.S. Supreme Court and the Seventh Circuit Court of Appeals.

In its order imposing the filing bar in this case, the court dismissed similar claims, particularly the plaintiff's claims that his conviction and sentence for threatening Judge Reynolds violated the Thirteenth Amendment, that because he is a direct descendant of slaves Congress could not deprive him of his Second Amendment right to possess arms and his similar claims against the Wisconsin legislature. Dkt. No. 8. Again, the court based its rulings on established precedent from the U.S. Supreme Court and the Seventh Circuit.

This court has explained to the plaintiff—more than once—that his Thirteenth Amendment claims (and his Fifteenth Amendment claims and his Second Amendment claims and his Article I, Section 9, Clause 3 claims) have no merit. The Seventh Circuit has explained to the defendant that these arguments lack merit and that his felony conviction (like every other felony conviction imposed on any defendant) carries collateral consequences. Smith, 840 F. App'x. 31, 33-34 (7th Cir. Mar. 16, 2021). This court has explained that the plaintiff's conviction and sentence are exceptions to the Thirteenth

11

Amendment's prohibition against slavery and involuntary servitude. Dkt. No. 28. The Seventh Circuit has labeled his Thirteenth Amendment arguments frivolous. Smith, 840 F. App'x at 33. Last year, the Seventh Circuit observed that the plaintiff continued filing meritless complaints and appeals notwithstanding the imposition of fines. Smith, 2023 WL 3581990, *1.

The court imposed the filing bar on November 14, 2019. It did so in an attempt to stop the plaintiff from repeatedly raising claims that the Supreme Court, the Seventh Circuit, this court and other district courts have told him have no merit. At the end of the order, it stated that no earlier than three years from that date, the plaintiff could file a motion asking the court to modify or rescind the order. That meant that any time after November 14, 2022, the plaintiff could ask the court to modify or rescind the filing bar, but that the bar would remain in place unless and until the plaintiff asked the court to modify or lift it and the court granted his request.

Less than a year after the court issued the filing bar, the plaintiff filed an amended complaint in Case No. 20-cv-1482. Case No. 20-cv-1482 at Dkt. No. 8. In that amended complaint, the plaintiff alleged that "but for the fact that they are Black descendants of American salves," the defendants would have honored their contract with him. Id. at 1. Although the plaintiff mentioned the Fair Labor Standards Act at the end of the complaint, id. at 3, both Judge Stadtmueller and the Seventh Circuit found that that amended complaint violated the November 14, 2019 filing bar.

Three years passed, and the plaintiff did not file a motion asking this court to modify or lift the filing bar. On January 29, 2024, he filed the complaint in Case No. 24-cv-121-LA; at that time, the filing bar remained in effect because the plaintiff had not asked this court to modify or lift it. Yet the

12

plaintiff alleged in that complaint that the defendants had violation his "13th Amendment right to be free from government slavery" and that they had "inflicted a badge of slavery upon" him. Case No. 24-cv-121, Dkt. No. 1 at 1-2. On March 6, 2024, Judge Adelman dismissed that case due to the Seventh Circuit's filing bar.

Three weeks later, the plaintiff filed the instant motion, in which he appears to be asking both for the court to clarify the bar and for the court to "rescind" it *nunc pro tunc* to November 2022. But he did not wait for the court's ruling before filing yet another case. On March 29, 2024, he filed the complaint in Case No. 24-cv-386-BHL; at that time, the bar remained in effect because this court had not ruled on the plaintiff's motion. Again, the plaintiff alleged that the defendants had violated his "Thirteenth Amendment right to be free from government slavery." Case No. 24-cv-386, Dkt. No. 1 at 1.

Even in the instant motion and in the plaintiff's brief in reply, he continues to make the arguments that this court, other district courts, the Seventh Circuit and the Supreme Court have rejected—that state and federal prohibitions against his possession of firearms and holding elected public office violate the Second, Thirteenth and Fifteenth Amendments. And he appears to attempt to re-litigate his decades-old criminal conviction for threatening Judge Reynolds.

Despite this court's order and the Seventh Circuit's orders, the plaintiff has continued to file lawsuits, and motions, arguing that parties are violating his Thirteenth Amendment rights. The last three lawsuits relate to the fact that he receives Medicaid benefits for acting as his brother's caregiver; he appears to have sued the defendants because he disagrees with the way they tell him he is allowed to bill, and because they haven't made payments he believes he is

13

owed. (See Dkt. No. 34-1 at 12-14.) For all the court knows, the plaintiff has suffered injuries for which a federal court could provide redress. But rather than asserting claims under valid, enforceable federal statutes, he insists on trying to raise his claims through causes of action—such as the Thirteenth Amendment—that this court and the Seventh Circuit have told him have no merit. And he continues to do so despite the imposition of significant monetary sanctions against him.

Because monetary sanctions have not deterred the plaintiff from asserting meritless causes of action, the defendant has suggested that the court should order the clerk of court to refuse to accept any filing from the plaintiff unless the plaintiff "receives express prior authorization by a judge of the Eastern District of Wisconsin." Dkt. No. 36 at 8. The defendant cites In re Chapman, 328 F.3d 903 (7th Cir. 2003) in support of this suggestion. In Chapman's case, the Executive Committee of the U.S. District Court for the Northern District of Illinois—a court with twenty-three district judges and fourteen magistrate judges—entered a regulatory injunction "directing that all materials Mr. Chapman tendered for filing in the district court (except those pertaining to criminal or habeas matters) be screened and approved by the Committee before they are forwarded to the clerk for filing." Id. at 904. This court—which has four district court judges in Milwaukee, two in Green Bay and three magistrate judges—has no such committee. If this court were to issue an order requiring screening of every document the plaintiff files, an individual judge would be required to perform that screening, just as an individual judge now must review his filings. And it is not clear what mechanism would allow the plaintiff to obtain a judge's permission to file a

complaint before he filed that complaint; there would be no lawsuit in which he could file a motion seeking such permission.

Nor is the clerk's office the appropriate entity to decide whether any document the plaintiff may file violates the court's filing bar. The court barred the plaintiff

> from filing any further pleadings or lawsuits in the Eastern District of Wisconsin bringing claims (in any form) arising out of his status as a descendant of slaves or his status as a convicted felon. This includes any claims that the federal government or its agencies, officials or representatives have passed laws or ratified constitutional provisions regulating the conduct of convicted felons in violation of the laws or Constitution of the United States.

Dkt. No. 8 at 24. It was not readily apparent from the complaint the plaintiff filed on September 22, 2020 in Case No. 20-cv-4182 that that complaint violated this court's bar; the complaint made bare-bones allegations of violations of the Fair Labor Standards Act and did not mention the plaintiff's status as a descendent of slaves, the Thirteenth Amendment or his status as a convicted felon. Case No. 20-cv-4182 at Dkt. No. 1. Only in his amended complaint, filed a month later, did the plaintiff allege that but for the fact that he and his co-plaintiff were "Black descendants of American Salves, CCI would honor its contract with them." Id., Dkt. No. 8 at 1. Judge Stadtmueller, as the presiding legal officer, concluded that the claims in the amended complaint violated this court's filing bar. Id., Dkt. No. 18 at 3. On appeal, the plaintiff argued that the filing bar did not block his suit "because he asked the district court for leave to amend his first claim to replace 'Black descendent of American slaves' with 'American Negro,' so as to avoid the language that triggers the filing bar." Id. at Dkt. No. 29, page 2. The Seventh Circuit analyzed this argument, and concluded that

15

> in his previous suits, and in this one, [the plaintiff] uses the phrase "descendent of American slaves" to describe his race. *See, e.g., Smith*, 2019 WL 6037487, at *2 (quoting [the plaintiff's] allegation of "Racism directed against him as a descendent of the slaves"). The filing bar therefore blocks any suit, like this one, that includes a claim arising out of [the plaintiff's] race, regardless of how he labels it.

Id., Dkt. No. 29 at 2-3.

Those analyses were conducted by judges, not administrators in the clerk's office. It remains true that each time the plaintiff files a lawsuit raising claims that have been rejected, he consumes "valuable judicial resources in an understaffed district with a heavy caseload." Dkt. No. 8 at 20. He also consumes the resources of the defendants against whom he brings meritless lawsuits. But the solution is not to mandate that he submit to a procedure that does not exist, or to put the clerk's office in the position of making legal determinations. Defendants who believe the plaintiff has violated the filing bar may seek increasingly large monetary sanctions; any judge may impose increasingly large monetary sanctions.

To the extent that the plaintiff asks the court to "rescind" the filing bar back to November 2022, the court will deny the plaintiff's motion, given his persistence in raising claims that multiple courts have told him are without merit. To the extent that the plaintiff seeks clarification as to the scope of the order, the court will grant that request. The court prohibited the plaintiff from filing any further pleadings or lawsuits in this district "arising out of his status as a descendent of slaves or his status as a convicted felon." Dkt. No. 8 at 24. The court used that language because that was the language the plaintiff had used—repeatedly—in asserting, and reasserting, meritless claims under the Second, Thirteenth and Fifteenth Amendments and under Article I, Section 9, Clause 3 of the U.S. Constitution. The plaintiff has attempted to get around the

16

court's language by using words other than "descendant of American slaves;" the district courts and Seventh Circuit have held that he cannot avoid the bar by replacing "Black descendant of American slaves" with "American Negro" or even "black." Smith, 2022 WL 1436799, *2. The Seventh Circuit held that "[t]he filing bar therefore blocks any suit, like this one, that includes a claim arising out of [the plaintiff's] race, regardless of how he labels it." Id. A year later, the Seventh Circuit commented on the plaintiff's meritless filings that included his attempt to sue a private company based on claims arising out of his status as a descendant of slaves. Smith, 2023 WL 3581990, *1.

As the court has observed, it is possible that—despite his repeated filing of complaints alleging meritless causes of action under the Second, Thirteenth and Fifteenth Amendments and under Article I, Section 9, Clause 3 of the U.S. Constitution—the plaintiff might suffer an injury as a result of a violation of Title VII, or the Fair Labor Standards Act, or regulations governing Medicare payments, or a violation of the Fourteenth Amendment's Equal Protection Clause. He might suffer an injury because of discrimination based on the fact that he is Black—there are constitutional provisions and statutes that specifically prohibit government entities from discriminating against someone based on race, national origin and ethnicity. If the plaintiff suffers such injuries, he *should* have access to the federal courts to seek redress for such injuries.

But the court will continue to bar the plaintiff from filing any lawsuit in this district that raises the causes of action that this court has rejected in Case Nos. 19-cv-671 and 19-cv-1001—including claims under the Second, Thirteenth and Fifteenth Amendments, or under Article I, Section 9, Clause 3 of the Constitution, or under the Dred Scott decision. That includes the three

17

cases dismissed by Judges Stadtmueller, Adelman and Ludwig, because in each of those cases the plaintiff attempted to raise his Thirteenth Amendment claim that because he is a descendent of enslaved people, certain actions violate his Thirteenth Amendment rights. His arguments that federal or state statutes placing restrictions on him or others who have felony convictions constitute "government slavery" and thus violate the Thirteenth Amendment *have no merit*. His arguments that such statutes constitute illegal bills of attainder *have no merit*. His arguments that government entities that do not follow their own regulations, or do not pay him as he believes he should be paid, are enslaving him in violation of the Thirteenth Amendment *have no merit*. Whatever claims he brings, they cannot be based on the alleged illegality of restrictions imposed on persons convicted of felonies, or on alleged violations of the Thirteenth Amendment.

As it did in November 2019, the court will allow the plaintiff to return to the court no sooner than three years from the date of this order to seek modification or lifting of the bar. Perhaps if the plaintiff suffers injuries during that time, he will find a way to seek redress for those injuries by alleging causes of action that federal courts have found to have merit, such as claims under valid federal statutes or actionable constitutional provisions.

### V. Conclusion

To the extent that it asks the court to rescind the November 2019 filing bar, the court **DENIES** the plaintiff's Motion to Comply with Judge Pepper's Perpetual Restricted Filing Order. Dkt. No. 34.

To the extent that the plaintiff asks the court to clarify the filing bar, the court **GRANTS** the plaintiff's Motion to Comply with Judge Pepper's Perpetual Restricted Filing Order. Dkt. No. 34.

The court **MODIFIES** the November 2019 filing bar as follows: The plaintiff is **BARRED** from filing any lawsuit in this district that raises the causes of action that this court rejected in Case Nos. 19-cv-671 and 19-cv-1001—including claims under the Second, Thirteenth and Fifteenth Amendments, or Article I, Section 9, Clause 3 of the Constitution, or the <u>Dred Scott</u> decision, and including any claims that the federal government or its agencies, officials or representatives or the State of Wisconsin or its agencies, officials or representatives have passed laws or ratified constitutional provisions regulating the conduct of convicted felons in violation of the laws or Constitution of the United States.

The court **ORDERS** that if the plaintiff violates this bar, he may be subject to sanctions imposed by any judge in this district.

The court **ORDERS** that the plaintiff is authorized to submit to this court, no earlier than three years from the date of this order, a motion to modify or rescind this order.

Dated in Milwaukee, Wisconsin this 10th day of January, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**